[No. 44015.    En Banc.    July 8, 1976.]

NORWAY HILL PRESERVATION AND PROTECTION ASSOCIATION, *Appellant*, v. KING COUNTY COUNCIL, ET AL, *Respondents*.

*Riddell, Williams, Ivie, Bullitt & Walkinshaw* and *Stimson Bullitt,* for appellant.

*Christopher T. Bayley, Prosecuting Attorney,* and *John E. Keegan, Deputy,* for respondent King County Council.

*Bogle & Gates,* by *Philip K. Sweigert,* and *Robert W. Graham,* for respondent Woodside Corporation.

HUNTER, J.—Appellant Norway Hill Preservation and Protection Association (Norway Hill Association) petitioned the King County Superior Court for a writ of certiorari to review the decision of respondent King County Council approving a preliminary plat for Norway Vista, a proposed housing subdivision. Appellant specifically chal-

lenged the Council's determination that an environmental impact statement was not required. By stipulation, respondent Woodside Corporation, the project developer, was allowed to intervene. The Superior Court denied the writ of certiorari and Norway Hill Association appealed from that judgment.

Norway Vista, the subject of the preliminary plat, consists of 52.3 acres located just south of the city of Bothell. The tract itself is heavily wooded and is part of a larger vacant and heavily wooded area that extends to the west. Adjoining properties to the east and south of the subject tract have been developed to an urban residential density (approximately four dwelling units per acre). To the north, the land has been cleared and there are scattered residences on ½-to 3-acre parcels. While not within the city limits of Bothell, the subject tract is nevertheless covered by that city's comprehensive plan. The proposed plat plan for Norway Vista provides for the creation of 198 lots, each with a single-family dwelling. The plat plan describes an urban-type development with full improvements including sanitary sewers, curb and gutter streets, sidewalks, and underground utilities.

The King County Council and its administrative departments, pursuant to applicable county ordinances, gave extensive consideration to the Norway Vista preliminary plat application. In its preliminary report, which was issued and sent to the county zoning and subdivision examiner on June 5, 1973, the Land Use Management Division of the County Department of Planning recommended approval of the Norway Vista plat subject to certain conditions.[1] The report also stated that the director of the Land Use Management Division had determined that an environmental impact statement was not necessary. The county zoning and subdivision examiner held a public hearing[2] that commenced on June 12, 1973, and was continued over to June 22, 1973, and June 25, 1973. On July 2, 1973, the examiner

---

[1] See King County Code 20.16.120.
[2] See King County Code 20.24.120.

issued his report to the King County Council in which he recommended approval of the preliminary plat application and concurred with the earlier determination that an environmental impact statement was not necessary.

Norway Hill Association appealed from this decision to the King County Council[3] and the Council remanded the matter back to the Land Use Management Division for reconsideration in light of a soils study received after the previous hearings. On September 4, 1973, the Land Use Management Division submitted an addendum to its previous report and again recommended approval of the plat application, subject to conditions, and stated that no environmental impact statement was necessary. The county zoning and subdivision examiner held hearings in regard to the remand on September 4 and 18, 1973. The examiner's findings, conclusions, and recommendations, which he issued on September 25, 1973, recommended approval subject to conditions and stated that an environmental impact statement was not necessary.

The matter was again appealed to the King County Council. Following consideration on December 12, 1973, the Council requested another environmental assessment from the Land Use Management Division in light of King County ordinance No. 1700, which had become effective October 26, 1973.[4] On January 3, 1974, the Land Use Management Division issued its environmental assessment in which it recommended approval of the proposed subdivision, subject to stated conditions, and determined

> that approval of the subject application would not constitute a major action significantly effecting the quality of the environment. Therefore, an Environmental Impact Statement is not required.

On February 4, 1974, the King County Council accepted the zoning and subdivision examiner's report of September 25, 1973. The Council concurred in the examiner's recommendations, and, accordingly, approved the Norway Vista pre-

---

[3]*See* King County Code 21.24.190.
[4]*See* King County Code 20.44.010-.170.

liminary plat, subject to the conditions contained in the examiner's recommendations.

Following this decision, the Norway Hill Association petitioned the Superior Court for a writ of certiorari, asserting that the King County Council had acted unlawfully in approving the preliminary plat without requiring an environmental impact statement pursuant to RCW 43.21C-.030(2)(c) before making its decision to grant approval. The judgment of the Superior Court denied the writ and made the following determination:

> The responsible officials for King County, in considering the environmental impact of the proposed Norway Vista plat and in determining that the Norway Vista plat was not a major action significantly affecting the quality of the environment and in approving the Norway Vista preliminary plat, complied fully with the requirements of the State Environmental Policy Act and acted reasonably and not arbitrarily and capriciously.

The dispositive and important issue presented in this appeal is the proper scope of judicial review applicable to a determination made pursuant to the State Environmental Policy Act of 1971 (SEPA), that because the government action in question would not significantly affect the quality of the environment, no environmental impact statement is required. Respondents King County Council and Woodside Corporation contend that the "arbitrary or capricious" standard of review is correct, and, therefore, the Superior Court correctly reviewed the matter. Appellant Norway Hill Association, on the other hand, argues that county approval of the preliminary plat was "a major action significantly affecting the environment" and, consequently, the Superior Court should have required an impact statement under a broader standard of review. As discussed below, we feel that determinations of no significant impact under SEPA, *i.e.*, "negative threshold determinations," require a reasonably broad standard of review. We believe that in addition to the "arbitrary or capricious" standard, the broader "clearly erroneous" standard of review is appropriate. Furthermore, we find that the King County

Council's determination that approval of the Norway Vista plat did not require an environmental impact statement was "clearly erroneous."

■ In deciding upon the proper scope of judicial review applicable to "negative threshold determinations" made pursuant to SEPA, it is important to consider the broad public policy promoted by that act. Briefly stated, the procedural provisions of SEPA constitute an environmental full disclosure law. The act's procedures promote the policy of fully informed decision making by government bodies when undertaking "major actions significantly affecting the quality of the environment." *See* RCW 43.21C.010; RCW 43.21C.030. We have recognized that not all actions are "major actions significantly affecting the quality of the environment," *see Eastlake Community Council v. Roanoke Associates, Inc.*, 82 Wn.2d 475, 491, 513 P.2d 36 (1973), and we have also recognized that "SEPA does not demand any particular substantive result in governmental decision making," *Stempel v. Department of Water Resources*, 82 Wn.2d 109, 118, 508 P.2d 166 (1973); *see Eastlake Community Council v. Roanoke Associates, Inc., supra* at 497 & n.6. Yet it is clear that the most important aspect of SEPA is the consideration of environmental values.

> In essence, what SEPA requires, is that the "presently unquantified environmental amenities and values will be given *appropriate consideration* in decision making along with economic and technical considerations." RCW 43.21C.030(2)(b). *It is an attempt by the people to shape their future environment by deliberation, not default.*

(Italics ours.) *Stempel v. Department of Water Resources, supra* at 118; *see Loveless v. Yantis*, 82 Wn.2d 754, 765, 513 P.2d 1023 (1973).

The mechanism through which this environmental consideration is accomplished is the detailed environmental statement required by RCW 43.21C.030(2)(c).

> [The environmental impact statement] is the basis upon which the responsible agency and officials can make the balancing judgment mandated by SEPA between the

benefits to be gained by the proposed "major action" and its impact upon the environment.

*Juanita Bay Valley Community Ass'n v. Kirkland,* 9 Wn. App. 59, 68, 510 P.2d 1140 (1973).

In order to achieve this public policy it is important that an environmental impact statement be prepared in all appropriate cases. As a result, the initial determination by the "responsible official," *see* RCW 43.21C.030(2)(c), as to whether the action is a "major action significantly affecting the quality of the environment" is very important. The policy of the act, which is simply to insure via a "detailed statement" the full disclosure of environmental information so that environmental matters can be given proper consideration during decision making, is thwarted whenever an incorrect "threshold determination" is made. The determination that an action is not a "major action significantly affecting the quality of the environment" means that the detailed impact statement of SEPA is not required before the action is taken or the decision is made. Consequently, "[w]ithout a judicial check, the temptation would be to short-circuit the process by setting statement thresholds as high as possible within the vague bounds of the arbitrary or capricious standard." Anderson, *The National Environmental Policy Act,* in Federal Environmental Law 361 (1974); *see* Note, *Threshold Determinations Under Section 102(2)(C) of NEPA: The Case For "Reasonableness" As A Standard For Judicial Review,* 16 Wm. & Mary L. Rev. 107, 109 (1975).

For the reasons stated above, we feel that judicial review of "negative threshold determinations" beyond that provided under the "arbitrary or capricious" standard is necessary. A "negative threshold determination" is more than a simple finding of fact because the correctness of a no significant impact determination is integrally linked to the act's mandated public policy of environmental consideration.

In addition to the familiar "arbitrary or capricious" standard of review, the administrative procedure act sets out the "clearly erroneous" standard. *See* RCW 34.04.130(6)(e).

A reviewing court may reverse an administrative decision

> if the substantial rights of the petitioners may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> . . .
>
> (e) clearly erroneous in view of the entire record as submitted and the public policy contained in the act of the legislature authorizing the decision or order . . .

RCW 34.04.130(6)(e). We defined this standard in *Ancheta v. Daly*, 77 Wn.2d 255, 259, 461 P.2d 531 (1969):

> Perhaps the best description of the "clearly erroneous" test was set forth by the United States Supreme Court in *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 92 L. Ed. 746, 766, 68 S. Ct. 525, 542 (1948): "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."

*Accord, Farm Supply Distribs., Inc. v. State Util. & Transp. Comm'n*, 83 Wn.2d 446, 449, 518 P.2d 1237 (1974).

■ The "clearly erroneous" standard provides a broader review than the "arbitrary or capricious" standard because it mandates a review of the entire record and all the evidence rather than just a search for substantial evidence to support the administrative finding or decision.[5] *See Ancheta v. Daly, supra* at 259, 260; *Department of Ecology v. Kirkland*, 8 Wn. App. 576, 580, 508 P.2d 1030 (1973), *aff'd on other grounds*, 84 Wn.2d 25, 523 P.2d 1181 (1974); *Williams v. Young*, 6 Wn. App. 494, 497, 494 P.2d 508 (1972). Judicial review under the "clearly erroneous" standard set out in RCW 34.04.130(6)(e) also requires consideration of the "public policy contained in the act of the legislature authorizing the decision." *See Ancheta v. Daly*,

---

[5]In an appropriate case an administrative decision could be "arbitrary or capricious," *e.g.*, where there is no evidence in the record to support it, and yet not be "clearly erroneous." *See Stempel v. Department of Water Resources*, 82 Wn.2d 109, 114, 508 P.2d 166 (1973). Nevertheless, as this opinion indicates, both standards of review are applicable to "negative threshold determinations," and therefore, a determination that is "arbitrary or capricious" but not "clearly erroneous" could not be sustained.

*supra* at 260-61. Consequently, that public policy is "a part of the standard of review." *See Schuffenhauer v. Department of Employment Security,* 86 Wn.2d 233, 235, 543 P.2d 343 (1975).

We feel that the "clearly erroneous" standard of review set out in RCW 34.04.130(6)(e) provides an appropriate scope of review in the area of "negative threshold determinations" under SEPA. That standard will allow a reviewing court to give substantial weight to the agency determination as required by RCW 43.21C.090, yet at the same time it will allow a reviewing court to consider properly "the public policy contained in the act of the legislature authorizing the decision or order."

As stated above, the public policy contained in SEPA is consideration of environmental values. To this end SEPA requires in appropriate cases a detailed environmental impact statement before decisions are made. The "clearly erroneous" standard of review permits sufficient judicial scrutiny of "negative threshold determinations" to prevent frustration of this policy. A determination of no significant environmental impact "can be held to be 'clearly erroneous' if, despite supporting evidence, the reviewing court on the record can firmly conclude 'a mistake has been committed.'" *Stempel v. Department of Water Resources, supra* at 114, quoting *Ancheta v. Daly, supra* at 260.

In addition to public policy considerations, the "clearly erroneous" standard also permits judicial scrutiny "in view of the entire record as submitted . . ." RCW 34.04.130(6)(e). The SEPA policies of full disclosure and consideration of environmental values require actual consideration of environmental factors before a determination of no environmental significance can be made. *See Juanita Bay Valley Community Ass'n v. Kirkland, supra* at 73; cf. *Arizona Pub. Serv. Co. v. Federal Power Comm'n,* 483 F.2d 1275, 1282 (D.C. Cir. 1973); *Narrowsview Preservation Ass'n v. Tacoma,* 84 Wn.2d 416, 422, 526 P.2d 897 (1974). As a result, a reviewing court will always have a complete record upon which to review a "negative threshold deter-

mination." In the absence of a record sufficient "to demonstrate that environmental factors were considered in a manner sufficient to amount to prima facie compliance with the procedural requirements of SEPA," *Juanita Bay Valley Community Ass'n v. Kirkland, supra,* a "negative threshold determination" could not be sustained upon review even under the "arbitrary or capricious" standard because the determination would lack sufficient support in the record. *See Stempel v. Department of Water Resources, supra* at 114. We hold, therefore, that both the "clearly erroneous" and "arbitrary or capricious" standards of review set forth in RCW 34.04.130 (6) (e) and (f) are appropriate for judicial review of determinations of no significant impact made pursuant to SEPA.[6]

■ Turning to the present case, we note that an appellate court, upon appeal from a superior court's application of any particular standard in reviewing an administrative decision, "applies the same standard directly to the administrative decision." *Department of Ecology v. Ballard Elks Lodge,* 84 Wn.2d 551, 555, 527 P.2d 1121 (1974); *see Farm Supply Distribs., Inc. v. State Util. & Transp. Comm'n, supra* at 448. Consequently, it is proper for us, having decided that the "clearly erroneous" standard *is* the correct one for reviewing "negative threshold determinations," to apply that standard and review the King County Council's decision in this case, that approval of the preliminary plat for the Norway Vista project "would not constitute a major action significantly effecting the quality of the environment."

■ The correctness of the Council's determination, as well as any "negative threshold determination," depends on the definition and scope of the phrase "significantly affecting" contained in RCW 43.21C.030 (2) (c). Unfortunately,

---

[6]The result reached in *Narrowsview Preservation Ass'n v. Tacoma,* 84 Wn.2d 416, 526 P.2d 897 (1974), is not inconsistent with the standards of judicial review set forth above. However, to the extent that any language in that case may be interpreted as contrary to the standards of review discussed in the present case, *Narrowsview* is hereby disapproved.

the legislature provided no guidance as to its intended definition and the courts and administrative agencies have likewise failed to evolve a precise and complete definition.[7] *See Recent Developments*, 49 Wash. L. Rev. 939, 959 (1974); Note, *Threshold Determinations Under Section 102(2)(C) of NEPA: The Case For "Reasonableness" As A Standard For Judicial Review*, 16 Wm. & Mary L. Rev. 107, 111-14 (1975). In an attempt to give some definite meaning to this statutory phrase, we have noted that

> the term "significantly" has been defined to include the examination of *at least* two relevant factors: (1) the extent to which the action will cause adverse environmental effects in excess of those created by existing uses in the area, and (2) the absolute quantitative adverse environmental effects of the action itself, including the cumulative harm that results from its contribution to existing adverse conditions or uses in the affected area.

(Italics ours.) *Narrowsview Preservation Ass'n v. Tacoma*, *supra* at 423. Still, a precise and workable definition is elusive because judgments in this area are particularly subjective—what to one person may constitute a significant or adverse effect on the quality of the environment may be of little or no consequence to another. *See Hanly v. Kleindienst*, 471 F.2d 823, 830 (2d Cir. 1972); *Recent Developments*, 49 Wash. L. Rev. 960 (1974). In spite of this difficulty, it is clear that the legislature intended that environmental values be given full consideration in government decision making, and it implemented this policy through the procedural provisions of SEPA which specify the nature and extent of the information that must be provided, and which require its consideration, before a decision is

---

[7]The legislature has attempted to correct this deficiency by setting up the Council on Environmental Policy and empowering it to adopt definitions and guidelines to aid the interpretation and implementation of SEPA. *See* RCW 43.21C.100; RCW 43.21C.110. The Council recently adopted the final version of its guidelines, effective January 16, 1976. Because they were not in effect when the controversy in this case arose, we need not consider their validity at this time. We note, however, that regulations covering "threshold determinations" are contained in WAC 197-10-300 to 375.

made. *See Loveless v. Yantis, supra* at 764; *Eastlake Community Council v. Roanoke Associates, Inc., supra* at 487, 490; *Stempel v. Department of Water Resources, supra* at 117-18; *Juanita Bay Valley Community Ass'n v. Kirkland, supra* at 63-65. Consistent with this policy it would seem appropriate to state a general guideline rather than attempt a value-laden definition of "significantly." Generally, the procedural requirements of SEPA, which are merely designed to provide full environmental information, should be invoked whenever more than a moderate effect on the quality of the environment is a reasonable probability. *See City of Davis v. Coleman,* 521 F.2d 661, 673-74 & n.16 (9th Cir. 1975).

In the present case, the King County Council, after determining that no environmental impact statement was required, approved a preliminary plat of a project that would transform a heavily wooded and unpopulated area into a residential suburban neighborhood. The Norway Vista project involves a large area and a large number of homes, including all the necessary amenities. In addition to its magnitude, the project will constitute a complete change of the use of the existing area.

Based on these undisputed facts, we feel that on its face the Norway Vista project will significantly affect the environment, and therefore, we are "left with the definite and firm conviction that a mistake has been committed." *See Ancheta v. Daly,* 77 Wn.2d 255, 259-60, 461 P.2d 531 (1969). The King County Council's determination that an environmental impact statement was not required was "clearly erroneous."[8] *Cf. Wyoming Outdoor Coordinating Council v. Butz,* 484 F.2d 1244, 1249 (10th Cir. 1973).

---

[8]We note that it is not disputed, and there is no question, that approval of the Norway Vista preliminary plat constituted a "major action" within the language of RCW 43.21C.030(2)(c). *See Loveless v. Yantis,* 82 Wn.2d 754, 764, 513 P.2d 1023 (1973); *Eastlake Community Council v. Roanoke Associates, Inc.,* 82 Wn.2d 475, 490, 513 P.2d 36 (1973).

■ The fact that the Council extensively considered the matter and issued its approval, without requiring an environmental impact statement, only after the imposition of conditions designed to protect the environment, does not change this result. Nor is the fact that Norway Vista is a logical extension of nearby developments and consistent with the county comprehensive plan determinative. The extent to which such protective conditions are necessary before approval, and a project's consistency with nearby uses or comprehensive plans, may be considered in evaluating the effect of a government action on the quality of the environment. But the clear mandate of SEPA, and the purpose behind the environmental impact statement requirement, is consideration of environmental values based on full information *before* a decision is made. The existence of certain nearby land uses does not mean that a similar one will not be significant, nor does the imposition of conditions nullify, for SEPA purposes, the otherwise significant effects of a project or government action. Where the effect is significant, SEPA requires an environmental impact statement in order that full information is available before government action is taken, with or without the imposition of conditions. One of the purposes of this complete information requirement is to help the agency decide what protective conditions are needed. *See Eastlake Community Council v. Roanoke Associates, Inc.*, 82 Wn.2d 475, 493, 496-97, 513 P.2d 36 (1973).

Since the Norway Vista project on its face involves the size and type of environmental change to which the full information requirement of SEPA was obviously meant to apply, an environmental impact statement should have preceded the decision to approve the preliminary plat application.

The judgment of the Superior Court is hereby reversed. Since the "threshold determination" made by the King County Council was "clearly erroneous," this case is re-

manded for further proceedings not inconsistent with the above opinion.

STAFFORD, C.J., and ROSELLINI, HAMILTON, WRIGHT, UTTER, BRACHTENBACH, and HOROWITZ, JJ., concur.

Petitions for rehearing denied August 27, 1976.