[No. 2389–2.   Division Two.   January 27, 1978.]

NEWAUKUM HILL PROTECTIVE ASSOCIATION, ET AL, *Appellants*, v. LEWIS COUNTY, ET AL, *Respondents.*

*Fred D. Gentry, Bean, Gentry & Rathbone, Ralph Olson,* and *Olson & Pietig,* for appellants.

*Jeremy Randolph, Prosecuting Attorney, Charles R. Byrd, Deputy, Daniel Murray,* and *Dysart, Moore, Tiller & Murray,* for respondents.

SOULE, J.—Brookbank, Inc., the respondent, desired to convert 40 acres of agricultural land located near Chehalis, Washington, to lots for mobile homes. The original plan called for 103 lots but this was subsequently reduced to 95. The Board of County Commissioners of Lewis County approved a preliminary subdivision plat. Robert Nix, his wife, and the Newaukum Hill Protective Association, who are or who represent residents in the area, appealed to the Superior Court.

The Superior Court entered a judgment affirming approval of the preliminary plat and upheld the action of the County Commissioners' negative threshold determination that an Environmental Impact Statement (EIS) was not necessary. From that judgment this appeal is taken.

Appellant assigned several errors but the controlling issues are (1) whether the court, in applying the "arbitrary or capricious" test, used the proper standard of review; and (2) if the "clearly erroneous" test applies, whether the record before this court is sufficient to support a finding by this court that an EIS was not necessary, *i.e.,* because it is reasonably probable from reading the whole record that the proposed action will not significantly affect the environment or, as it is sometimes stated, have no more than a moderate effect upon the environment.

*Norway Hill Preservation & Protection Ass'n v. King County Council,* 87 Wn.2d 267, 552 P.2d 674 (1976), clearly establishes that the scope of judicial review is not limited by the so-called "arbitrary or capricious" standard. On page 275 the court said:

> We feel that the "clearly erroneous" standard of review set out in RCW 34.04.130(6)(e) provides an appropriate scope of review in the area of "negative threshold determinations" under SEPA. That standard will allow a reviewing court to give substantial weight to the agency determination as required by RCW 43.21C.090, yet at the same time it will allow a reviewing court to consider properly "the public policy contained in the act of the legislature authorizing the decision or order."

. . . A determination of no significant environmental impact "can be held to be 'clearly erroneous' if, despite supporting evidence, the reviewing court on the record can firmly conclude 'a mistake has been committed.'" *Stemple v. Department of Water Resources*, [82 Wn.2d 109, 508 P.2d 166 (1973)] *supra* at 114, quoting *Ancheta v. Daly*, [77 Wn.2d 255, 461 P.2d 531 (1969)] *supra* at 260.

In light of *Norway Hill*, it was error for the trial court to employ only the more limited "arbitrary or capricious" standard of review. *Accord, Sisley v. San Juan County*, 89 Wn.2d 78, 569 P.2d 712 (1977).

In fairness to the trial court and the attorneys for all parties, it should be noted that *Norway Hill* was decided after the judgment was entered in this case and the parties and the trial court were thoroughly justified in relying upon the earlier case of *Narrowsview Preservation Ass'n v. Tacoma*, 84 Wn.2d 416, 526 P.2d 897 (1974), which applied the more restrictive "arbitrary or capricious" test.

An understanding of the second issue will be aided by the following chronology.

July 1974. Brookbank submits a proposed plat to the Planning Department.

July–November 1974. Planning Commission holds public hearings.

October 8, 1974. Planning *Department* approves preliminary plat with conditions.

November 14, 1974. Planning *Commission* notifies the County Commissioners that they recommend the proposed plat be *not approved*. On that same date the Planning *Department* forwards a copy of its environmental assessment to the County Commissioners. Both the Planning Commission and the Planning Department recommend against an Environmental Impact Statement.

November 18, 1974. County Commissioners meet. The minutes of the meeting reflect receipt of the reports of the Planning Commission and the Planning Department.

November 25, 1974. County Commissioners meet and pass resolution 572–74 stating that no Environmental

Impact Statement was required. They also passed resolution 574–74 setting up a public hearing.

December 9, 1974. Public hearing called but a continuance granted.

January 6, 1975. Public hearing held.

January 14, 1975. Public hearing held.

January 27, 1975. Commissioners meet and pass resolution No. 75–34 approving preliminary plat and resolution 75–36 dispensing with Environmental Impact Statement.

April 15, 1976. Superior Court affirms Commissioners' actions.

The parties concede that prima facie the facts here are sufficiently similar to *Norway Hill* that if nothing more were before the court, it would be said that the proposed action will significantly affect the environment and thus require an EIS.

The respondents urge, however, that the present case is distinguishable because the County Commissioners conducted extensive public hearings before making their final determination to dispense with the EIS. No such hearings were conducted in *Norway Hill.* At the Lewis County hearings, environmental considerations were extensively discussed, particularly as they related to the critical problem of septic tank usage. The respondents contended that the evidence at the January hearings was sufficient, both as to quality and quantity, to fully advise the County Commissioners and thus afford an adequate basis for their decision not to order an EIS.

In *Juanita Bay Valley Community Ass'n v. Kirkland,* 9 Wn. App. 59, 510 P.2d 1140 (1973), the court recognized that a determination not to require an EIS may be upheld, but in so observing, it said at page 73:

> A decision by a branch of state government on whether or not to prepare an Environmental Impact Statement is subject to judicial review, but before a court may uphold such a decision, the appropriate governing body must be able to demonstrate that environmental factors were considered in a manner sufficient to amount to prima

facie compliance with the procedural requirements of SEPA.[1]

■ Having determined that the "clearly erroneous" standard is the correct one for reviewing the negative threshold determination, it is our duty to apply that same standard to the record. *Farm Supply Distribs., Inc., v. State Utils. & Transp. Comm'n*, 83 Wn.2d 446, 448, 518 P.2d 1237 (1974). We have therefore reviewed the action of the Lewis County Commissioners to determine if the approval of the Brookbank plat would constitute a major action significantly affecting the quality of the environment. *Norway Hill Preservation & Protection Ass'n v. King County Council, supra.*

We note the record before us is incomplete in some details with respect to what transpired at some of the early stages in October and November of 1974, when the matter was before the Planning Commission, the Planning Department and the Board of County Commissioners. On November 25, 1974, the Board of County Commissioners enacted the resolution declaring that an EIS would not be necessary. Though the record of these proceedings is incomplete, the environmental assessment by the County Planning Department is before us.

In that document, under the heading "Sewage Disposal Facility," we find the following:

> The use of individual septic tank and drainfield as a means of sewage disposal for this development has met with approval from both the Washington State Department of Social and Health Services and the Lewis County Health District.
>
> There is no evidence to indicate that this method of sewage disposal will represent a threat to water supply in this area. Therefore, the environmental impact of such facilities is judged to be insignificant.

---

[1]Subsequent to the County Commissioners' actions in this case, the Council on Environmental Policy published *Guidelines Interpreting and Implementing the State Environmental Policy Act.* WAC 197–10. Included therein is an *Environmental Checklist* to help agencies determine whether an Environmental Impact Statement is required. *See* WAC 197–10–365.

This document gives no clue to the possible problems generated by marginal soil quality, limited life expectancy of drain fields, or the possible minimum area required *or* needed to provide for long–range accommodation of this type of facility. We believe, however, that this is not determinative of the case.

We have also read the complete record of the hearings conducted in January of 1975, preceding the final action of the County Commissioners. At these hearings the problem of suitability of this land for septic tanks was discussed and hotly debated. The facts were plain that at best the land had potential septic tank problems by virtue of its soil composition.

The problem directly presented to the Commissioners was whether a plat which concentrates population as densely as does the proposed one, adequately provides for the long–range problems inherent in the use of septic tanks. On January 6, 1975, Jack Morris, the Director of Environmental Health of the Lewis County Health Department testified that existing standards for septic tanks in Lewis County were rather low. He stated further, that state requirements would shortly be higher than those currently expressed by Lewis County ordinances. These changes, and the resultant upgrading of the applicable standards, would relate not only to the rate of percolation required but also to minimum lot sizes which would be permitted.

At one point he stated that the existing regulations were probably not adequate. At another, he recognized that even under the new state regulations the present site, with its percolation problems, would be classified as poor. He further noted that there was under consideration a change by the state in standards for a minimum lot size which might raise the minimum to 18,000 square feet. This he conceded to be a significant difference from the 11,000 square foot lots contemplated by the proposed plat. Mr. Morris also recognized that any drain field has a definite life, depending upon the nature of the soil and the uses made by a particular family.

Dr. R. Sherwin Johnson, director of the Lewis County Health Department, was also called. A fair summary of his testimony at the January 14 hearing is that drain fields do not have indefinite life; when they fail the effluent surfaces and poses a direct health hazard. His testimony confirmed that of Mr. Morris as to what happens when a drain field does fail.

There was other testimony offered, some of it conflicting. It is apparent that the actual testing of the soils was done by representatives of Lewis County and that the soils are reasonably typical of the marginal septic tank conditions prevailing in much of that county.

■ The policy of SEPA requires decision–makers to consider long–range impact as well as short–term benefits. *See* RCW 43.21C.030. The testimony of both Mr. Morris and Dr. Johnson clearly demonstrates that the approval of this plat will inevitably cause serious long–range problems in the platted area because of the small size of the lots combined with the poor absorptive qualities of the soil.

We think that under these circumstances it was "clearly erroneous" for the Commissioners to conclude that this plat approval would cause no significant environmental impact. We have the definite and firm conviction that it was a mistake to excuse an EIS in which these matters could have been formally noted and which should give detailed consideration to the alternative possibilities of a community sewer system, larger lots, or indeed delaying development of this heavy concentration of population until the entire area can be embraced in a municipal sewer system.

We wish to note that, for the purpose of this decision, we have reached this conclusion without giving any consideration to the possible adverse ground–water problems to which neighboring lands may be subjected, if the action of the subsurface water proves to be that described by Doctors Lawrence and Webster.

Other procedural errors are asserted. But we do not reach them because this case must be reversed and remanded with direction to prepare an EIS should the respondents

care to pursue this present platting effort. Thereafter, the preliminary plat can be reconsidered by the appropriate county agencies and their decision made in the light of the contents of that statement.

The judgment is reversed and this matter is remanded for further proceedings consistent with this opinion.

REED, A.C.J., and PETRIE, J., concur.