**YAKIMA INDIAN NATION, Plaintiff,**

v.

**WHITESIDE, et al., Defendants.**

No. C–83–724–JLQ.

United States District Court,
E.D. Washington.

Sept. 11, 1985.

Jeffrey C. Sullivan, Pros. Atty., Yakima County, Yakima, Wash., for defendants Whiteside, Tollefson, Klarich, Anderwald and Yakima County.

Patrick Andreotti, Flower & Andreotti, Yakima, Wash., for defendant Brendale.

John K. Johnson, Brooks & Larson, Yakima, Wash., for defendant Stanley L. Wilkinson.

Walter G. Meyer, Halverson & Applegate, Yakima, Wash., for defendants Gatliff and Keller.

James B. Hovis, Hovis, Cockrill, Weaver & Bjur, Yakima, Wash., for plaintiff.

MEMORANDUM OPINION

QUACKENBUSH, District Judge.

The Yakima Indian Nation (Yakima Nation) brought this suit seeking a declaratory judgment and injunction barring the defendants from taking or permitting any land use within the so-called "Open Area" of the Yakima Indian Reservation (Reservation) which is contrary to the Amended Zoning Regulations of the Yakima Nation (Yakima Nation Code). The named defendants are the Yakima County Commissioners; the Director of Yakima County Planning Department; and Stanley Wilkinson, record owner of fee land within the "Open Area." [1] Specifically, the plaintiff seeks to impose its zoning and land use law on a 32 acre parcel of land owned by defendant Wilkinson. Additionally, the Yakima Nation asks the court to limit Yakima County's regulatory authority over this property to the extent that the County's laws would allow land uses inconsistent with those permitted by the plaintiff. In other words, the plaintiff seeks a judicial declaration that its regulatory jurisdiction over Wilkinson's property is paramount and exclusive.

The plaintiff's complaint also contains allegations of civil rights deprivations. More particularly, the Yakima Nation contends that the County's assertion of its zoning jurisdiction over the Wilkinson property violated Section 1 of the Civil Rights Act of 1971. (Codified at 42 U.S.C. § 1983).

Following a four day bench trial the court entered an oral decision favorable to the defendants. (Ct.Rec. 81).[2] What follows is the court's written opinion including its Findings of Fact and Conclusions of Law. This written opinion shall supplement the court's oral opinion.

FACTUAL BACKGROUND

The Yakima Indian Nation is a composite of fourteen (14) originally distinct Indian

---

1. In addition to those defendants, the complaint also named Jim Gatliff and Dick Keller, prospective purchasers of some of the at-issue property. By oral ruling on May 23, 1984 the court, pursuant to Fed.R.Civ.P. 41(b), rendered judgment in favor of defendants Gatliff and Keller.

2. The court's oral decision encompassed only the plaintiff's request for a declaratory judgment on the regulatory jurisdiction issue. The Yakima Nation's Section 1983 claim and pendent state claim were expressly excluded from the oral decision but are addressed in this written opinion.

752

tribes who banded together in the mid–1900's for the purpose of negotiating with the United States. Pursuant to a treaty signed in 1855 and ratified in 1869, 12 Stat. 951, these various tribes ceded vast areas of land but also reserved an area for their "exclusive use and benefit". This reserved area is the Yakima Nation Indian Reservation (Reservation).

The Reservation is located in southeastern Washington. It's exterior boundary encompasses approximately 1.3 million acres of land. Of this amount, about eighty percent of the land is held in trust by the United States for the benefit of the Tribe or its individual members (trust lands). The remaining land is held in fee by Indians or non-Indian owners (fee land). The majority of this fee land lies within the three incorporated towns in the northeastern part of the reservation—Toppenish, Wapato and Harrah. The remainder is scattered throughout the reservation creating the now familiar "checkerboard" effect. The fee lands fall within the boundaries of Klickitat, Lewis and Yakima Counties.

Most of the trust land lies within the Reservation's "Closed Area", an area accessible only by members of the Yakima Nation and its permittees. This area occupies essentially the western two-thirds of the Reservation. It covers approximately 807,000 acres, 740,000 of which fall within Yakima County. Of this latter figure, 25,-000 acres are fee land. The Closed Area is predominately forested (about two-thirds), the balance being classified as range land. The topography of this area varies from the gently sloping range land along its eastern edge, to deep river valleys in the central part and finally to the mountain peaks of the Cascade Range along its western boundary.

The "Closed Area" is relatively undeveloped. There are no permanent residences in the Yakima County portion of the area. Its abundant flora and fauna serve as a source of food for many members of the Yakima Nation; its forests provide substantial economic support; and its intangible and spiritual values play a significant role in the tribal culture. In sum, as this court found in *Yakima Indian Nation v. Whiteside, et al.*, 617 F.Supp. 735 (1985) ("*Whiteside I*"), "the Closed Area is an integral part of the Yakima Indian Nation."

The "Open Area", on the other hand, is strikingly dissimilar to the "Closed Area." As its name suggests, access to the area is not limited by the Yakima Nation and non-tribal members move freely throughout the area. Compared to the predominately forested "Closed Area", the "Open Area" is primarily composed of rangeland, agricultural land and land being used for residential and commercial purposes. Another distinguishing characteristic is that almost half of the total "Open Area" acreage is fee land. That factor, coupled with the extensive county-maintained road system and the residential and commercial developments render the "Open Area" a sharp contract to the pristine, wilderness-like character of the "Closed Area".

*Tribal Land Use Regulations:*

In October 1970, the Yakima Nation instituted its first Zoning Ordinance. That ordinance was a six-page Tribal Resolution modeled after a similar Yakima County ordinance. The Zoning Ordinance designated all areas within the exterior boundaries of the reservation, both trust and fee lands (except the incorporated cities and towns) as being within the General Use District. All otherwise lawful uses were generally permitted except certain activities requiring a conditional use permit. *E.g.*, asphalt mixing plants, junk yards, certain feedlots, above ground storage tanks, etc. The Board of Adjustment, composed of all the members of the Tribal Council, sat as the Board of Appeals from administrative decisions and the Hearing Board for conditional use applications. Its decisions were the final tribal action.

In May 1972, the Yakima Nation adopted a new zoning law, the Amended Zoning Ordinance, which remains in effect today. Like its predecessor, the Amended Zoning Ordinance expressly is made applicable to fee land. Besides that similarity, this

twenty-seven page document resembles the original ordinance only in the composition of the Board of Adjustments and its function. Otherwise, it is much more detailed and comprehensive. Among other things, it establishes a requirement for building permits, minimum lot sizes, authorizes the establishment of Planned Development Districts, provides for Special Use Permits and creates five categories of Use Districts. These Use Districts are: Agricultural, Residential, Commercial, Industrial, and Reservation Restricted Area.

The at-issue Wilkinson property is zoned "agricultural" by the Yakima Nation. According to the Amended Zoning Ordinance, that designation denotes that the "principal use of the land is for agricultural purposes." Buildings are prohibited on land zoned "agricultural", except as follows: agriculture-related buildings, agriculture products processing plants, buildings on public parks and playgrounds and single-family dwellings. The minimum lot size in an agriculture use district is five acres. The Yakima Nation's designation of the at-issue property as "agriculture" and the resultant limited uses is the primary source of the present litigation.

*Yakima County Land Use Regulations:*

As early as 1946 the County of Yakima regulated land use within its boundaries. This regulation was, however, not extensive until 1965 when the county adopted its first zoning ordinance which, as stated previously, was the model for the Yakima Nation's initial zoning ordinance.

The present comprehensive zoning regulations, The Yakima County Code, was first enacted in 1972. It was struck down for a procedural defect, but readopted in its same form in October, 1974. Within its seventy-two pages, the Yakima County code identifies numerous specified use districts which generally regulate agricultural, residential, commercial, industrial, and forest-watershed uses. In the reservation area, the official county zoning map segregates the fee lands from the trust lands. The county does not apply its zoning law to trust lands.

Yakima County has designated the subject Wilkinson property as "general rural." "General rural" is a use district established in a 1982 amendment to the Yakima County Code which eliminated a single "agricultural" designation and replaced it with three separate use districts: "exclusive agricultural;" "general agricultural;" and "general rural." Both the "exclusive" and "general" agricultural districts permit varied agriculture-related uses. The main difference between these two agricultural districts is that the former has a minimum lot size of 40 acres while the minimum lot size for the latter is 20 acres. Both agricultural districts, however, allow the parcel to be subdivided once every five years to create a lot no more than two acres but no less than one-half acre in size. The two agricultural districts are expressly designated to protect the county's agricultural land and prohibit or minimize the impact of uses which are inconsistent with agricultural uses.

The "general rural" designation of the Wilkinson property, on the other hand, is designated to accommodate a broader range of uses. This district is intended to "provide protection for the county's unique resources and land base;" "minimize scattered rural developments ... by encouraging clustered development;" and "permit only those uses which are compatible with [the] rural character." Although the "permitted uses" for this district are identical to those of the "exclusive" and "general" agricultural districts, the potential number and variety of uses possible via special use permits are considerably greater. The minimum lot size in the "general rural" district is one-half acre but the average size of lots created by a subdivision must be at least one acre.

In addition to its comprehensive zoning regulations, Yakima County has other land use regulations applicable to fee land within the county. Its 1974 Subdivision Ordinance imposes standards for streets, water, sewage, drainage, parks and recreation areas, and school sites. The Yakima County Shoreline Master Program, adopted in 1974

as mandated by state law, regulates certain activities adjacent to shorelines. Also, as a participant in the federal flood insurance program the county attempts to control flood plain development. Another of Yakima County's state-mandated land use regulations is its Environmental Ordinance which requires a review of the potential environmental impact of all non-exempt land use actions. None of the above-described regulations have been applied to trust lands on the Yakima Nation Reservation.

*The Wilkinson Property:*

Defendant Wilkinson owns a 40 acre tract of fee land in the extreme northeast corner of the Reservation.[3] The land is approximately three-quarters of a mile south of the Reservation's northern boundary. The parcel is situated on the northern slope of Ahtanum Ridge, overlooking the Yakima Municipal Airport (1½ miles to the north) and the City of Yakima (3 miles to the north). Wilkinson's property is bordered to the north by trust land and to the east, south and west by fee land. Currently, the property is vacant sagebrush land.

In September 1983 defendant Wilkinson applied to the Yakima County Planning Department to subdivide a portion of his 40 acre parcel. Specifically, by filing five contiguous short plat applications, Wilkinson proposed to subdivide 32 acres into twenty lots. The lot sizes range from 1.1 acres to 4.5 acres. The proposal contemplates that each lot will be used for a single family residence to be served by individual well and on-site septic systems.

In compliance with the county's Environmental Ordinance, Mr. Wilkinson submitted an Environmental checklist from which the county Planning Department could assess the potential impact of his proposed development and decide whether an Environmental Impact Statement (EIS) was warranted. As discussed *infra*, the Planning Department initially issued a Declaration of Significance, necessitating the preparation of an EIS. That declaration was, however, withdrawn and replaced by a Declara-

tion of Non-Significance after Wilkinson agreed to modify his proposal as suggested by the county.

Thereafter, the Yakima Nation timely appealed that Declaration of Non-significance to the Yakima County Board of Commissioners. The grounds for the appeal were two-fold: (1) that Yakima County was without authority to regulate the land use of the Wilkinson property and (2) that the proposed Wilkinson development would significantly affect the environment and therefore an EIS was required. A hearing on the Tribe's appeal was conducted by the County Commissioners on October 25, 1983. During the early stages of the hearing, the Yakima Nation strenuously argued the regulatory jurisdictional issue but, based upon advice from the county legal department, the Commissioners concluded that the appeal was properly before the Board and limited the appellants to presenting evidence as to the EIS issue only. Following hearing testimony and cross-examination of witnesses, the Commissioners found that the Wilkinson proposal would not have a significant impact on the environment and affirmed the County Planning Department's Declaration of Non-Significance.

Yakima County has withheld final disposition of Wilkinson's subdivision proposal pending the outcome of this litigation.

In addition to the factual background as set forth above, the court makes the following specific factual findings:

1. The proposed Wilkinson subdivision described real property situated in Yakima County, Washington:

> The Northeast Quarter of the Southwest Quarter of Section 10, Township 12 North, Range 18 East, W.M.

The property is approximately three miles south of the City of Yakima, one-quarter mile south of McCullough Road and approximately one-half mile east of 42nd Avenue.

---

**3.** Wilkinson is a non-Indian and is not a member of the Yakima Nation.

2. The subject parcel lies within the exterior boundaries of the Yakima Nation Reservation in the so-called "Open Area."

3. Three incorporated municipalities—Harrah, Toppenish and Wapato—with a total population of approximately 10,000 people lie within the "Open Area."

4. Roughly eighty percent of the "Open Area" 's residents are non-Indians. Those individuals represent approximately fourteen percent of the total population of Yakima County.

5. The "Open Area" is serviced primarily by close to five hundred miles of Yakima County-maintained roads.

6. Agriculture and related activities are the leading source of income in the "Open Area."

7. Yakima County has a Comprehensive Plan and a Rural Land Use Plan expressly designed to protect the county's valuable agricultural land and other resources.

8. To effectuate the goals of those plans, the county has adopted a comprehensive zoning ordinance. The "Open Area" is primarily zoned "exclusive agriculture", "general agriculture" and "general rural." "Exclusive" and "general" agriculture zones predominate. Within the "Open Area" that zoning scheme achieves a delicate balance of protecting agricultural land and other resources while allowing for some development.

9. In part due to the parcel size requirements of the county's "exclusive" and "general" agriculture zones, i.e., 40 and 20 acres respectively, the Yakima County zoning scheme is more protective of the Open Area's agricultural lands than the Yakima Nation's "agricultural" use district which allows agricultural land to be divided into 5-acre lots.

10. The trust land in the vicinity of the Wilkinson property is not a significant source of food for members of the Yakima Nation. The proposed Wilkinson development does not threaten a food source of members of the Yakima Nation.

11. Similarly, the Wilkinson project does not threaten the economic security of the Yakima Nation. The plaintiff has not demonstrated how Yakima County's regulation of the land use of Wilkinson's "Open Area" property in any way places its economic security in jeopardy.

12. In contrast to the "Closed Area", the "Open Area" is not of a unique religious or spiritual significance to the members of the Yakima Nation. The county's regulation of the Wilkinson property will not significantly infringe on those cultural values.

13. While the court is aware of the special role which land and other natural resources play in the culture of the Yakima Indian Nation, the court finds that the county's exercise of its land use regulatory jurisdiction over the subject property does not threaten those aspects of the tribal culture.

14. The Yakima Nation's political integrity will not be diminished. The County's regulation of Wilkinson's fee land will not hinder the Yakima Nation from exercising its regulatory jurisdiction over the trust land.

15. In sum, the court finds that Yakima County's exercise of its regulatory jurisdiction over the at-issue Wilkinson property does not threaten and will not have a direct effect on the Yakima Nation's political integrity, its economic security or its health or welfare.

## LEGAL ANALYSIS

The court's legal analysis must focus on three issues: the regulatory jurisdiction question; the Yakima Nation's Section 1983 claim; and, the pendent state claim. Each of these issues will be addressed separately.

## A. JURISDICTION TO REGULATE LAND USE:

The resolution of the jurisdictional dispute requires a two-step analysis. The court must first decide whether the Yakima Nation has any authority to regulate the activities of defendant Wilkinson on his Open Area fee land. If the tribe does

indeed have that power, then the next inquiry is whether Yakima County may exercise its concurrent jurisdiction over the same property. If, on the other hand, the Yakima Nation lacks the power to assert regulatory jurisdiction over Wilkinson's property, then the second step in the analysis is not necessary—Yakima County will have exclusive authority over Wilkinson's fee land.

1. *Tribal Authority: Public Law 280:*

■ The defendants argue that Congress has stripped the Yakima Nation of any power it may have had to exercise civil regulatory authority over Wilkinson's property. Specifically, the defendants contend that when the State of Washington assumed jurisdiction over the Yakima Reservation pursuant to § 6 of the Act of August 15, 1953, 67 Stat. 588, 590 (Public Law 280) (hereinafter P.L. 280) the Yakima Nation was divested of its inherent tribal authority to regulate the activities of non-Indians on deeded land.[4] The gist of their argument is that P.L. 280 was a *grant* of jurisdiction to the state (and therefore the county) which necessarily must have *withdrawn* jurisdiction from the Tribe. This argument is without merit for several reasons.

■ To begin with, P.L. 280 neither increased nor diminished a state's authority over the reservation activities of non-Indi-

ans. In no way can it be construed as a grant of such authority—no such grant was necessary. Under P.L. 280, states retain the same regulatory jurisdiction over the on-reservation activities of non-Indians "that they enjoyed prior to that Law". *White Mountain Apache Tribe v. State of Arizona,* 649 F.2d 1274, 1279 (9th Cir. 1981). And it is settled law that long before the enactment of P.L. 280, states (and presumably a political subdivision like Yakima County) had the power to assert sovereign powers over the reservation activities of non-Indians. *See, e.g., Draper v. United States,* 164 U.S. 240, 17 S.Ct. 107, 41 L.Ed. 419 (1896); *Utah & Northern R.R. v. Fisher,* 116 U.S. 28, 6 S.Ct. 246, 29 L.Ed. 542 (1885). The only limitations on that power are the independent but related barriers of "infringement on the inherent tribal sovereignty", *see e.g., Williams v. Lee,* 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959) and the doctrine of "federal preemption". *See e.g., New Mexico v. Mescalero Apache Tribe,* 462 U.S. 324, 103 S.Ct. 2378, 76 L.Ed.2d 611 (1983).

Further evidence that P.L. 280 did not in any way affect the powers of a state over non-Indians is the law's purpose. P.L. 280 was designed to remedy the problem of the lack of state jurisdiction over *Indians* in their dealings (criminal or civil) with non-Indians. *See* Goldberg, *Public Law 280: The Limits of State Jurisdiction Over*

---

**4.** WASH.REV.CODE § 37.12.010 provides:
Assumption of criminal and civil jurisdiction by state. The State of Washington hereby obligates and binds itself to assume criminal and civil jurisdiction over Indians and Indian territory, reservations, country, and lands within this state in accordance with the consent of the United States given by the act of August 15, 1953 (Public Law 280, 83rd Congress, 1st Session), but such assumption of jurisdiction shall not apply to Indians when on their tribal lands or allotted lands within an established Indian reservation and held in trust by the United States or subject to a restriction against alienation imposed by the United States, unless the provisions of R.C.W. 37.12.021 [tribal consent] have been invoked, except for the following:
(1) Compulsory school attendance;
(2) Public assistance;
(3) Domestic relations;

(4) Mental illness;
(5) Juvenile delinquency;
(6) Adoption proceedings;
(7) Dependent children; and
(8) Operation of motor vehicles upon the public streets, alleys, roads and highways. *Provided further,* that Indian tribes that petitioned for, were granted and became subject to state jurisdiction pursuant to this chapter on or before March 13, 1963 shall remain subject to state civil and criminal jurisdiction as if chapter 36, Laws of 1963 had not been enacted.
This partial assumption of jurisdiction over Indians (based on the status of the land on which the questioned activity occurred) has been sanctioned by the Supreme Court. *Washington v. Confederated Bands and Tribes of the Yakima Indian Nation,* 439 U.S. 463, 99 S.Ct. 740, 58 L.Ed.2d 740 (1979).

*Reservation Indian,* 22 U.C.L.A. Law Rev. 535 (1975). The states needed Congressional authorization to exert power over Indians. No such authorization was needed, however, as to the states' authority over non-Indians. Thus, P.L. 280 was *not* a grant to the states of jurisdictional powers over non-Indians. Accordingly, it cannot be construed as supplanting the tribe's authority with state authority [5] or divesting the tribe of whatever inherent power it has over the reservation activities of non-Indians. *See Cardin v. De La Cruz,* 671 F.2d 363 (9th Cir.1982), *cert. denied,* 459 U.S. 967, 103 S.Ct. 293, 74 L.Ed.2d 277 (1982); *Sechrist v. Quinault Indian Nation,* I.L.R. 3064 (W.D.Wash.1982).[6]

### 2. *Tribal Authority: The Montana Test:*

Having concluded that P.L. 280 did not affect a Tribe's regulatory authority over non-Indian fee land, the court must now determine whether the Yakima Nation has such authority over Wilkinson's fee land. Although Indian Tribes possess "attributes of sovereignty over both their members and their territory", *United States v. Wheeler,* 435 U.S. 313, 323, 98 S.Ct. 1079, 1086, 55 L.Ed.2d 303 (1978), the dependent status of tribes and their diminished status as sovereign limits their power in relations between a Tribe and non-members of the Tribe. *Id.* at 326, 98 S.Ct. at 1087. In fact, Indian Tribes have been divested of the power to exercise any criminal jurisdiction over non-Indians. *Oliphant v. Suquamish Indian Tribe,* 435 U.S. 191, 98 S.Ct. 1011, 55 L.Ed.2d 209 (1978). Similarly, a Tribe's inherent power to exert civil jurisdiction

over non-Indians has been diminished. While a Tribe does possess the power to "exclude nonmembers entirely or to condition their presence on the reservation", *New Mexico v. Mescalero Apache Tribe,* 462 U.S. 324, 103 S.Ct. 2378, 2385, 76 L.Ed.2d 611 (1983), apparently that power may be exercised over non-Indian fee lands only in limited circumstances. *Montana v. United States,* 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981). Thus, in certain situations a Tribe may "exercise some forms of civil jurisdiction over non-Indians on their reservation, even on non-Indian fee lands." *Id.* at 565, 101 S.Ct. at 1258. Unfortunately, the parameters of that power are anything but settled; nevertheless, the Court has provided guidance which is pertinent to the case at hand.

■ The *Montana* Court identified two situations in which the exercise of tribal civil jurisdiction over non-Indian fee land may be appropriate. The first instance is where a non-Indian, through a business relationship or otherwise, has entered into a "consensual relationship" with the tribe or its members. *Id.* at 565, 101 S.Ct. at 1258. Such is not the case here as there is no evidence of any "consensual relationship" between the Yakima Nation and Wilkinson which would place the subject property within the authority of the Tribe.

The second situation described by the *Montana* Court is where the non-Indian's conduct "threatens or has some direct effect on the political integrity, the economic security or the health or welfare of the tribe." *Id.* at 566, 101 S.Ct. at 1258. Thus,

---

**5.** Even if P.L. 280 were interpreted as an affirmation or expansion of the state's jurisdiction over non-Indians, it is limited to "civil litigation" and not "general state civil regulatory control" such as zoning. *See Bryan v. Itasca County,* 426 U.S. 373, 384–85, 96 S.Ct. 2102, 2108–09, 48 L.Ed.2d 710 (1976); *Barona Group of Capitan Grande Band v. Duffy,* 694 F.2d 1185, 1188 (9th Cir.1982) (P.L. 280, does not enable California to impose its *regulatory* bingo laws on the reservation); *United States v. County of Humboldt,* 615 F.2d 1260 (9th Cir.1980) (California municipality may not zone restricted lands); *Santa Rosa Band of Indians v. Kings County,*

532 F.2d 655 (9th Cir.1976) (California county may not zone restricted lands).

**6.** Both cited cases upheld the Quinault Indian Nation's application of its zoning laws to non-indian owned deeded lands. The State of Washington exercises the same degree of P.L. 280 jurisdiction over the Quinault Indian Reservation as it does over the Yakima Reservation. *See, Comenout v. Burdman,* 84 Wash.2d 192, 525 P.2d 217 (1974). Implicitly then, these two cases must be interpreted as rejecting the notion that P.L. 280 stripped tribes of their civil jurisdictional authority.

absent a "consensual relationship", the critical factual determination which must be made in deciding whether a Tribe may regulate the land use of a non-Indian on fee land is whether the non-Indian's activities pose a threat to the Tribe's political integrity, its economic security or its health and welfare. *Id.* at 565–66, 101 S.Ct. at 1258–59; *see United States v. Anderson,* 736 F.2d 1358 (9th Cir.1984) (tribe lacked power to regulate water use of non-Indian fee landowners within the reservation); *Cardin v. De La Cruz,* 671 F.2d 363 (9th Cir.1982) (building, health and safety regulations applied to nonmember business located on fee lands within the reservation), *cert. denied,* 459 U.S. 967, 103 S.Ct. 293, 74 L.Ed.2d 277 (1982); *Knight v. Shoshone & Arapahoe Indian Tribes,* 670 F.2d 900 (10th Cir.1982) (tribal zoning ordinance applied to fee land within the reservation); *Colville Confederated Tribes v. Walton,* 647 F.2d 42 (9th Cir.1981) (tribe allowed to exercise regulatory authority over water use of Non-Indian fee land-owners within the reservation), *cert. denied,* 454 U.S. 1092, 102 S.Ct. 657, 70 L.Ed.2d 630 (1981); *Sechrist v. Quinault Indian Nation,* 9 I.L.R. 3064 (W.D.Wash.1982); *Lummi Indian Tribes v. Hallover,* 9 I.L.R. 3025 (W.D.Wash.1982).

■ As stated in the Findings of Fact, this court finds that Wilkinson's proposed development does not pose a threat to the "political integrity", the "economic security" or the "health and welfare" of the Yakima Nation. The mere fact that the Tribe's zoning ordinance differs in some respects from that of Yakima County does not rise to the level of a "threat" to the Tribe. As applied in the "Open Area," Yakima County's zoning ordinance will adequately regulate the land use of the fee lands and not pose a threat to the trust lands. Consequently, this court must conclude that the Yakima Nation is without the authority to exercise regulatory jurisdiction over Wilkinson's "Open Area" fee land.

## B. SECTION 1983 CLAIM: [7]

The bases for the Yakima Nation's civil rights claim are twofold. First, the Tribe asserts that the County Commissioners denied it due process of law by not providing the Tribe a meaningful opportunity to be heard on the jurisdictional issue. Second, the Tribe argues that Yakima County's attempts to exercise jurisdiction over the Wilkinson property violated rights enforceable under Section 1983. For the reasons discussed below, the court concludes that neither of these two alleged bases of Section 1983 liability has merit.

■ Assuming that the Yakima Nation is a proper plaintiff in a Section 1983 action,[8] the court finds that it was not denied due process of law by the Yakima County Commissioners. The purpose of the hearing conducted on October 25, 1983 was to hear the Tribe's appeal of the Planning Department's Declaration of Non-Significance. The hearing was statutorily mandated to provide the Tribe with the opportunity to convince the Commissioners that the Planning Department had erred and show that Brendale's proposed development warranted the preparation of an Environmental Impact Statement. The hearing

---

**7.** 42 U.S.C. § 1983 states:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other property proceeding for redress.

**8.** The parties have expended considerable effort in debating whether an Indian Tribe such as the Yakima Nation may bring a Section 1983 action. The resolution of that issue turns on whether the Tribe is "any citizen of the United States or other *person* within the jurisdiction thereof...." 42 U.S.C. § 1983 (emphasis added). Neither the court nor the litigants have located any legal precedent which directly addresses that issue. It is not, however, necessary to answer that novel question since the court concludes that the Yakima Nation has not been deprived of "any rights, privileges, or immunities secured by the Constitution and laws...." *Id.*

was neither designed as a forum to contest jurisdiction nor was it an appropriate forum for such a debate. As demonstrated by the complexity of this lawsuit and the cases cited in this opinion, Indian reservation jurisdictional disputes are not easily resolved. It is unrealistic for the Yakima Nation to expect and even demand that it be given free reign at the administrative podium to argue and present evidence pertaining to the issue of jurisdiction, particularly when the Commissioner's sole function was to determine whether an EIS was warranted. The Commissioner's decision to allow the Yakima Nation to state its objections to the county's jurisdiction over the Wilkinson property and then going forward with the appeal hearing was the proper course of action. The Tribe suffered no infringement on its rights to due process of law. *See generally Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

■ While the Tribe's first basis for its Section 1983 Claim must fail because no due process deprivation occurred, its second basis fails because the county has not infringed on any "right" of the Tribe: the Yakima Nation has no "right" to regulate the land use activities on the Wilkinson property and therefore the county's regulation of that property does not infringe on any "right" of the Tribe.[9] Thus, the court concludes that the plaintiff has not stated a Section 1983 claim and is therefore not entitled to attorney's fees under Section 1988.

## PENDENT CLAIM: SEPA VIOLATION

In addition to the regulatory jurisdiction issue which is governed by federal law, the Tribe asserts a pendent claim based upon Washington state law. Specifically, the Tribe alleges that Yakima County erred in

its determination that the proposed Wilkinson subdivision would not have a significant adverse impact on the environment. *See* Wash.Rev.Code 43.21C.030(c). For the reasons discussed below, the court concludes that the declaration of non-significance was not "clearly erroneous" and, therefore, is affirmed. *See, Norway Hill v. King County Council,* 87 Wash.2d 267, 552 P.2d 674 (1976) (standard of review of "negative threshold determinations" governed by "clearly erroneous" test).

Initially, Yakima County concluded that the proposed subdivision would have "a significant adverse impact on the environment." (Trial Exhibit 221–15). That Declaration of Significance identified two factors which led to the decision: (1) the potential impact of 1.5 miles of private access roads; and, (2) the potential impact of private septic systems and individual wells in the "event of future redivision of the 20 lots." *Id.* The Declaration of Significance stated, however, that it could be withdrawn and replaced with a declaration of non-significance if certain conditions were met. *Id.* Those conditions were designed to prevent or mitigate the potential adverse effects of the private access road, and the proliferation of individual septic systems. *Id.*

By written agreement with the County of Yakima, Mr. Wilkinson modified his proposal by agreeing to have the private roads designed and constructed according to proper engineering standards and maintained by a private road maintenance association. (Trial Exhibit 221–18). Additionally, Wilkinson agreed that "[a] note shall be placed on the face of each short plat limiting further division of any of the lots described on the said short plats unless and until an approved public water supply is developed to serve all of the parcels." *Id.* Because of these modifications the County withdrew its Declaration of Significance

9. In contrast to this case, in *Whiteside I* the court determined that the Yakima Nation does have the authority to exercise regulatory jurisdiction over fee land within the "Closed Area." Furthermore, the court concluded that the

County of Yakima is "preempted" from exercising its concurrent jurisdiction over that same land. Nevertheless, the court held that "preemption" does not give rise to a claim cognizable in a Section 1983 action.

and issued a final Declaration of Non-Significance (Trial Exhibit 221–19), thereby negating the requirement that an Environmental Impact Statement be prepared.

In a timely manner, this Tribe appealed the Declaration of Non-Significance to the Yakima County Commissioners. Following a hearing, the Commissioners found, *inter alia,* that "the potential adverse environmental impacts of the proposal as originally presented will be mitigated or prevented by the measures outlined in the agreement." (Trial Exhibit 222). Based upon their findings, the Commissioners concluded that "the proposed contiguous short plats submitted by Stanley L. Wilkinson will not have a significant adverse environmental impact" and affirmed the Declaration of Non-Significance. *Id.*

█ This court's review of the County's Declaration of Non-Significance is limited; the only question is whether it was "clearly erroneous." *Norway Hill v. King County Council,* 87 Wash.2d 267, 552 P.2d 674 (1976). A determination is " 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Hayden v. Port Townsend,* 93 Wash.2d 870, 880, 613 P.2d 1164 (1980) (*quoting, Norway Hill,* 87 Wash.2d at 274, 552 P.2d 674). In applying that standard, this court is mindful that the "decision of the governmental agency shall be accorded substantial weight." *Id.* at 880, 613 P.2d 1164 (quoting, Wash.Rev.Code 43.21C.090).

█ The Tribe, while conceding that the written agreement (Trial Exhibit 221–18) eliminated the pretrial adverse impact of the private roads, argues that the septic system problem has not been eliminated or sufficiently mitigated. That argument, however, was rejected by the County Commissioners who found that the septic system problem "will be mitigated or prevented by the measures outlined in the agreement ..." (Trial Exhibit 222). This court must also reject the Tribe's argument as the County's decision is not "clearly erroneous." It is supported by the recommendation of the Yakima Health District which had performed on-site inspections of soil profile holes (Trial Exhibit 221–12); the soil and slope classification of the United States Soil Conservation Service which indicates that portions of the subject property are suitable for "septic tank absorption fields" (Trial Exhibit 221–8); and, the testimony of Mr. Anderwald who stated that each of the newly created lots had a site suitable for an individual septic system. (Trial Exhibit 219 at p. 19). That evidence, combined with the fact that no further subdivision is to occur absent the installation of a community water system leads this court to conclude that no "mistake has been committed," *Norway Hill,* 87 Wash.2d at 274, 552 P.2d 674, and the Declaration of Non-significance was not "clearly erroneous."

## CONCLUSION

Based upon the above Findings of Fact and legal conclusions, judgment shall be entered against the plaintiff and in favor of defendants to the following extent:

1. The court declares that the Yakima Nation has no authority to exercise regulatory jurisdiction over the land use of the Wilkinson property described in this memorandum opinion. Plaintiff's request for declaratory and injunctive relief is DENIED and its regulatory jurisdiction claim is DISMISSED WITH PREJUDICE.

2. Plaintiff's Section 1983 claims are DISMISSED WITH PREJUDICE.

3. Yakima County's Declaration of Non-Significance is AFFIRMED and plaintiff's pendent state SEPA claim IS DISMISSED WITH PREJUDICE.

IT IS SO ORDERED. The Clerk is directed to enter this Order and forward copies to counsel.