[No. 46022. En Banc. July 10, 1980.]

STEPHEN HAYDEN, ET AL, *Appellants,* v. THE CITY OF PORT TOWNSEND, ET AL, *Respondents.*

*J. Richard Aramburu,* for appellants.

*Glenn Abraham,* for respondent Port Townsend.

*Bogle & Gates, Delbert D. Miller, Mary L. Gaudio,* and *A. Clemens Grady,* for respondents Safeway Stores, et al.

*Platt, Irwin & Colley,* by *Bart G. Irwin* and *Stephen E. Oliver,* for respondents Swain.

Hicks, J.—Appellants seek to invalidate (1) a rezone by the City of Port Townsend of 11.94 acres of undeveloped land, and (2) a building permit issued for a portion of the rezoned property to respondent Safeway Stores, Inc. The trial court upheld the action of the City. On appeal, the matter was certified here by the Court of Appeals. We affirm the trial court.

The land concerned is located in the City of Port Townsend several hundred feet southwest of a small body of water known as Kah Tai Lagoon. It is perhaps a little greater distance north of Port Townsend Bay. Sims Way, the principal highway entering the city, borders the property on the south and runs between it and the bay. It is approximately 1 mile from this location to downtown Port Townsend.

Prior to the rezone, the land was owned by H. J. Carroll, a longtime Port Townsend realtor. Formerly a marshy area frequently covered by water, the area was used as a disposal site for spoil dredged from the bay. Thereafter, Carroll expended a substantial amount of money in bringing in fill dirt to raise the tract to the approximate level of the highway.

The land southwest of the subject property is occupied by an A & W Drive–In and across Sims Way are several industrial and commercial businesses, including a marina and a lumberyard. This area has been the subject of a number of planning studies.

In 1969, the City developed a comprehensive plan for the community under RCW 35.63. A comprehensive zoning ordinance adopted in 1971 classified the Carroll property P–I, public use.

July 14, 1976, Carroll filed with the city clerk a rezone application and on September 29, under WAC 197–10–365, he submitted an environmental checklist to accompany the rezone request. Carroll sought to change the classification of his property to C–II, general commercial.

Following Carroll's submission of the environmental checklist, the matter was referred to the city planning commission. October 25, the planning commission held its hearing on the application and recommended approval of the rezone to the city council.

At public hearings held December 7, 1976, and January 4, 1977, comments for and against the rezone were received by the council. Following the hearings, the city council indicated approval of the rezone and on March 1, 1977, it passed ordinance No. 1780 which reclassified the Carroll property C–II.

Before the council took the rezone action, the city engineer, designated as the city's State Environmental Policy Act (SEPA) administrator, made a threshold determination regarding the rezone application. A negative declaration resulted and no environmental impact statement (EIS) was required. In effect, this was a decision that the rezone was not an action that would significantly affect the environment. This negative threshold declaration was not reduced to writing.

Some time after the rezone action, Safeway entered into an option agreement to buy part of the rezoned land. It submitted an environmental checklist to the City on May 6, 1977, and made known its desire to build a supermarket on the property. At the time of trial, Safeway had expended many thousands of dollars in preparation for construction of such a market.

Respondents Swain purchased part of the rezoned property for the purpose of building a department store. The

purchase price was $100,000. Swain would not have bought this property had it not been zoned C–II permitting commercial use of the land.

The city engineer reviewed Safeway's environmental checklist and determined that certain deficiencies existed in its plan for utilizing the property. After a series of meetings involving various governmental entities, the deficiencies were resolved. On October 14, 1977, Safeway submitted a written application for a building permit to the City. A proposed declaration of nonsignificant environmental impact concerning the Safeway building permit was issued October 17, 1977, and duly published. A final declaration of nonsignificance was issued November 7, 1977, and some time after November 16, 1977, Safeway received its building permit.

Appellants challenged the rezone and issuance of the building permit by filing an action in Jefferson County Superior Court on December 6, 1977. The matter came on for trial June 5, 1978, and continued for 4 days. The trial court entered findings of fact and conclusions of law on August 11, 1978. The court then dismissed the complaint and held, *inter alia,* (1) the action challenging the rezone was barred by laches; (2) formal findings of fact and conclusions as a basis for granting the rezone were not required as this matter predated *Parkridge v. Seattle,* 89 Wn.2d 454, 573 P.2d 359 (1978), where the requirement was prospectively established; (3) the fact that the negative threshold determination was not reduced to writing did not invalidate the rezone; and (4) environmental factors had been considered and no decision of the City was clearly erroneous or arbitrary and capricious.

I

■ Laches is an equitable defense bottomed upon estoppel. *Conaway v. Co–Operative Homebuilders,* 65 Wash. 39, 117 P. 716 (1911). The elements of this defense, which its proponent has the burden of proving, consist of: (1) knowledge by plaintiff of the facts constituting a cause

of action or reasonable opportunity to discover such facts; (2) unreasonable delay by plaintiff in commencing an action; and (3) damage to the defendant resulting from the delay in bringing the action. *Buell v. Bremerton,* 80 Wn.2d 518, 522, 495 P.2d 1358 (1972).

Here, the decision to rezone was made by the city council January 4, 1977, and the ordinance formally finalizing the matter was adopted 2 months later on March 1. The city planning commission, following a public meeting, had passed favorably upon the requested rezone the previous October 25 and recommended approval of the application to the city council. The council held two public meetings on the rezone. Appellants, or some of them, attended these public meetings. They were aware of the imminence of the rezone certainly no later than the city council's January 4, 1977, public hearing. As to the first element of laches, there is no question appellants had knowledge.

As to the second element, appellants took no legal action for 11 months—almost a year. This action was commenced December 6, 1977. Is this an unreasonable delay considering the chronology of events set forth above? The trial court concluded that it was. We do not believe appellants have demonstrated otherwise.

Appellants argue the delay in commencing their action was occasioned by the rapid course of events and the confusion as to whether a building permit would be issued to Safeway. Rather than being an argument for delay, continuous activity would seem to mandate a need for action— not procrastination.

H. J. Carroll was in the real estate business in Port Townsend and had been for 40 years. Whether appellants knew of his ownership of the 11.94 acres at the time it was being converted from marshy area to filled land does not appear from the record. There can be no question, however, of their knowledge of the change in character of the land. That change occurred openly, where all could see. When Carroll applied to rezone the acreage to C–II in July 1976, it should have been apparent that the ultimate usage of the

property would be commercial if the rezone request was granted.

That is exactly what began to occur following enactment of the rezone ordinance. Options were executed, plans were formulated, environmental concerns were resolved, a building permit was issued to Safeway, and a portion of the acreage was purchased by the Swains with the objective of using it commercially. Throughout all this activity, as far as we can determine from the record, appellants gave no indication they would contest the rezone.

Clearly, positions had been changed over the ensuing months after it became apparent the rezone would be granted. Just as clearly, should appellants prevail in upsetting the rezone, those who had changed their positions in reliance on the validity of the rezone would be damaged. Element No. 3 of the laches doctrine is established.

■ Thus, we believe the trial court was correct when it held that facts of this case support the defense of laches. Nonetheless, we are reluctant to rest a decision in an environmental matter affecting an entire community on laches. Often what is everybody's business is nobody's business. In the face of serious defects in a rezone action, to estop a community from challenging that action solely because a developer moved with dispatch while challengers were getting organized, raising funds, selecting an attorney and the like, causes us some hesitation. *See* discussion in *Lopp v. Peninsula School Dist. 401*, 90 Wn.2d 754, 758–59, 585 P.2d 801 (1978). In this instance, we find no defects—procedural or substantive.

## II

■ Questions are raised by appellants concerning the impact of *Parkridge v. Seattle, supra*, on this case. Specifically, the city council's failure to make findings and give reasons in writing for the rezone is questioned. The trial court ruled that such requirement established in *Parkridge* was prospective and, since the rezone at issue here was

adopted before *Parkridge* was decided, written findings were not mandatory. The trial court was correct.

In *Parkridge,* we held that a rezone of 8 1/2 lots was in the nature of an adjudicatory action rather than legislative, as it is when a city adopts a comprehensive plan or zoning ordinance. We said that in such a case the burden of proof is on the proponents to show that the rezone bore a reasonable and substantial relationship to promotion of the public health, safety, morals or the general welfare. As noted below, the trial court found that burden had been satisfied.

In *Parkridge,* the rezone would have further restricted the rights of the property holder in the use of the lots involved. Here, the rezone expanded the uses which the owner could make of his property. In *Parkridge,* the landowner was protesting the rezone. Here, it was the landowner who sought the rezone.

In *Pierce v. King County,* 62 Wn.2d 324, 382 P.2d 628 (1963), we extolled the virtues of zoning laws. Nevertheless, at page 336, we observed:

> [D]espite the beneficial results and the public necessity involved in the establishment of the zoning laws, they constitute a serious impairment of the right to use and enjoy property, and they do interfere with the possession thereof.

Consequently, perhaps it is not necessary to scrutinize as meticulously the relationship between a rezone and the promotion of the public health, safety and welfare when the restrictions on the use of one's property are to be relaxed as when the restrictions are being further circumscribed.

■ Be that as it may—here, both the city's planning commission and council, after public hearings, concluded the landowner's application for the rezone was in the public interest and should be granted. No procedural defects exist; both proponents and opponents of the action had input and the decision–making body held that the proponents should prevail.

In this instance, Port Townsend had adopted a comprehensive development plan in 1969 and a general zoning ordinance in 1971. As we said in *Farrell v. Seattle,* 75 Wn.2d 540, 543, 452 P.2d 965 (1969):

> We also recognize that, although zoning implies a degree of permanency, municipal authorities must be responsive to changing conditions and circumstances which justify revision of existing zoning classifications. Otherwise, the outdated land use restrictions may become unreasonable, and refusal to amend or modify zoning ordinances could result in arbitrary and unreasonable conduct.

Here, the request for rezone (July 1976) comes relatively soon after adoption of the comprehensive development plan and the zoning ordinance. To prevail, proponents must demonstrate a change of circumstances if a rezone is resisted, as it is in this instance.

The trial court held that the change of condition resulting from much of downtown Port Townsend being designated for historical preservation, taken together with the topography of the city, met the test of changed circumstances warranting a rezone. Compliance with the historical preservation rules leaves insufficient land area available in downtown Port Townsend to accommodate a supermarket the size contemplated by Safeway. Thus, even though the application for a rezone came within 5 years of adoption of the general zoning scheme, the request is not unreasonable. Where proper procedure is followed, including public hearings, it is for the city council to determine, in the light of changed circumstances, whether the general welfare of the community is furthered by rezoning the 11.94 acres for commercial usage. The trial court found nothing to militate against the council's decision. While we are aware that there is not unanimity of opinion in Port Townsend regarding this rezone, that division of opinion as such is not a matter for the courts.

Appellants' reliance upon *Parkridge* to support their position in opposition to the rezone is misplaced. In *Parkridge,* the trial court found neither change of circumstances nor sufficient evidence to support the rezone, concluding that the action was invalid as being arbitrary and capricious. Here, the trial court found both changed circumstances and sufficient evidence to conclude that the rezone was based upon reason. The city council's decision to grant the rezone may not be characterized as arbitrary or capricious.

█ Appellants also question whether the preparation and consideration of an EIS was required prior to the decision by the city council to rezone. Nonproject rezoning has been held not to require an EIS as long as the council retains the authority to require such an evaluation at the project permit stage. *Ullock v. Bremerton,* 17 Wn. App. 573, 565 P.2d 1179 (1977); *see Narrowsview Preservation Ass'n v. Tacoma,* 84 Wn.2d 416, 423–24, 526 P.2d 897 (1974). That is the situation here. The rezone of the Carroll property carried no specific building project in connection with it. In any event, an environmental checklist was submitted to accompany the rezone application and a nonimpact threshold determination was made by the city engineer. The trial court found sufficient consideration was given to environmental factors by the council in reaching its rezone decision and we are not shown that the court's decision is erroneous.

### III

█ Of more serious concern to us is appellants' challenge to the negative threshold determination made regarding the Safeway building permit. A governmental body in the process of making a decision which has a potential for impacting the environment must first determine if the contemplated action requires preparation and consideration of an EIS. Major action significantly affecting. the quality of the environment must be preceded by a consideration of environmental and ecological factors and

requires an EIS. RCW 43.21C.030(2)(c); *Sisley v. San Juan County*, 89 Wn.2d 78, 82–83, 569 P.2d 712 (1977), and cases cited.

In *Sisley*, we recognized that where a government action consists of issuing a permit for a private project, a 2-step analysis is involved. Here, as in *Sisley*, we are concerned with the second step of the analysis—the threshold determination of the project's environmental significance. Under our rule, to reach a valid negative threshold determination, environmental factors must have been evaluated to such an extent as to constitute prima facie compliance with SEPA procedural requirements.

Upon review of a negative threshold decision, a reviewing court must be mindful that "the decision of the governmental agency shall be accorded substantial weight." RCW 43.21C.090. The standard of review is that of "clearly erroneous".

> "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."

*Norway Hill Preservation & Protection Ass'n v. King County Council*, 87 Wn.2d 267, 274, 552 P.2d 674 (1976), quoting *Ancheta v. Daly*, 77 Wn.2d 255, 259–60, 461 P.2d 531 (1969).

Here, the city engineer determined that the contemplated Safeway building project would not significantly affect the environment. This negative threshold determination was made only after the city engineer reviewed Safeway's proposal and held a number of meetings with Safeway and various governmental entities concerned with environmental factors. Deficiencies disclosed by review and discussion of the proposed plan were remedied by Safeway prior to its formal application for a building permit.

While appellants challenge the procedure used by the city engineer, under the circumstances the procedure appeals to us as eminently sensible. Where it is feasible, it appears reasonable to resolve potential environmental

problems before a formal application is made for a building permit. The pertinent question is whether environmental factors were adequately considered before a final decision was made. That matter was explored at some length during the trial. Here, on the basis of the entire record, the trial court concluded the negative threshold determination was not clearly erroneous. We agree.

■ Appellants' contention that the negative threshold determinations in both instances, rezone and building permit, are required to have been reduced to writing is without merit. It is the consideration of the environmental factors, not the format, that is of import. *Bellevue v. King County Boundary Review Bd.*, 90 Wn.2d 856, 867, 586 P.2d 470 (1978).

Affirmed.

UTTER, C.J., and ROSELLINI, STAFFORD, WRIGHT, BRACHTENBACH, HOROWITZ, DOLLIVER, and WILLIAMS, JJ., concur.