[No. 10772–1–I.   Division One.   December 21, 1981.]

TERRY A. BROWN, ET AL, *Appellants*, v. THE CITY
OF TACOMA, ET AL, *Respondents*.

*Ronald E. Thompson,* for appellants.

*Robert R. Hamilton, City Attorney, Harding Roe, Assistant,* and *Robert Nelson* and *Thomas Fishburne,* for respondents.

JAMES, C.J.—Terry A. Brown and other owners of property (Brown) adjacent to the site of a proposed 34–unit condominium to be located within the city of Tacoma appeal from the Superior Court affirmance of a determination by the city's Department of Public Works (Department) that no environmental impact statement was required. We affirm.

Tacoma's zoning permits construction of the proposed condominium on the site. Nearby areas, however, are zoned for single–family residences. An elementary school is located across the street from the project site. The building will rise between 44 and 64 feet above a sloping street level.

In March 1979, Thomas Croke, one of the builders for the project, submitted an environmental checklist to the Department. On April 9, the Department advised Croke that the checklist was deficient, and directed Croke to add or substitute comments pertaining to specific environmental impacts. The Department also directed Croke to include "[m]itigating [m]easures" relating to erosion control and restricted construction hours for noise control. On April 23, Croke submitted a revised checklist adopting the language directed by the Department, except for assessments of traffic volume, potential hazards to school children, and view blockage, as to which Croke provided revised alternative evaluations. On April 30, the Department filed a proposed

environmental declaration of nonsignificance and submitted copies to other city agencies and neighborhood groups for their comments. In response to agency comments, the Department solicited comments from the fire department concerning its capacity to handle an emergency at the proposed building. The Department also required Croke to hire an engineering firm to analyze noise, shadow effect, and view blockage resulting from the project. The engineering firm submitted a report concluding these environmental impacts would be slight and, as for noise, capable of mitigation. The Department also conducted a study of the structure's shadow effect and impact on traffic. The Department issued its final declaration of nonsignificance on July 11, 1979.

■ Brown recognizes that the standard of review is as stated in *Hayden v. Port Townsend*, 93 Wn.2d 870, 880, 613 P.2d 1164 (1980):

> Upon review of a negative threshold decision, a reviewing court must be mindful that "the decision of the governmental agency shall be accorded substantial weight." RCW 43.21C.090. The standard of review is that of "clearly erroneous".
> "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."
> *Norway Hill Preservation & Protection Ass'n v. King County Council*, 87 Wn.2d 267, 274, 552 P.2d 674 (1976), quoting *Ancheta v. Daly*, 77 Wn.2d 255, 259–60, 461 P.2d 531 (1969).

Brown first contends that the Department acted arbitrarily, capriciously, and in a clearly erroneous manner by relying upon a biased and erroneous environmental checklist prepared by Croke and "rubber stamping" its approval of Croke's checklist so as to "dissemble away environmental impacts." We do not agree.

■ Regulations promulgated pursuant to RCW 43.21C-.110 and WAC 197–10–010 require "an environmental checklist to be initially completed by an action proponent,

whether public or private", which "form must be used in the threshold determination". WAC 197–10–050. It is the responsibility of the private applicant to prepare the environmental checklist. WAC 197–10–100(2). Although the preparation of an initial checklist is delegated to the applicant, the regulations do not contemplate complete reliance by the lead agency upon the statements contained therein. The agency "shall independently evaluate each item on the checklist and indicate the results of this evaluation." WAC 197–10–320. The agency may call for further information, initiate studies, and consult with other agencies if it cannot make a threshold determination on the basis of its initial review of the environmental checklist. WAC 197–10–330(1)(a)–(c). The final checklist and other information submitted by Croke may be deficient in some areas, but the record indicates the Department was apprised of specific deficiencies raised by Brown. The extensive review and consideration given Croke's checklist and the modifications ordered and studies conducted belie Brown's contentions that the Department relied upon the allegedly biased and erroneous checklist and "rubber stamped" its approval of the project on that basis.

Brown next contends the Department acted in an arbitrary, capricious, and clearly erroneous manner by weighing and evaluating environmental impacts and alternatives in a manner impermissible at the threshold determination stage. Specifically, Brown contends that regulations were violated because the agency (here, the Department) cannot require a complete analysis or "'mini–EIS'" at the threshold stage, citing WAC 197–10–100, because the agency cannot weigh the checklist factors at that stage, citing WAC 197–10–360(2), and because the agency cannot balance the beneficial aspects of the proposal against its adverse impacts in making the threshold determination, citing WAC 197–10–360(3). We are not persuaded that the Department acted in an impermissible manner.

The regulations plainly contemplate that the agency may rely on a wide variety of information in addition to the

initial checklist in making its threshold determination of environmental significance or nonsignificance; indeed, "[t]he threshold determination by the lead agency *must be based upon information reasonably sufficient to determine the environmental impact of a proposal.*" (Italics ours.) WAC 197–10–330(1). The agency's options are wide:

If, after its initial review of the environmental checklist, the lead agency determines the information available to it is not reasonably sufficient to make this determination, one or more of the following may be initiated:

(a) The applicant may be required to furnish further information. This additional information shall be limited to the subjects on the environmental checklist. An applicant may be required to provide explanations of any "no" answers to questions on the checklist.

(b) The lead agency may initiate further studies, including physical investigations on the subject property, directed toward providing additional information on the environmental impacts of the proposal.

(c) The lead agency may consult with other agencies with jurisdiction over the proposal, requesting substantive information as to potential environmental impacts of the proposal which lie within the area of expertise of the particular agency so consulted. . . .

(2) When the lead agency obtains information reasonably sufficient to assess the adverse environmental impacts of the proposal, it shall immediately make the threshold determination. In the event that the further investigations authorized by this section do not provide information reasonably sufficient to assess any potential adverse environmental impacts of the proposal, an EIS shall be prepared.

WAC 197–10–330, in part. The agency is thereby permitted extensive analysis relevant to the existence of particular environmental impacts, without necessarily weighing benefits against adverse effects or preparing a "'mini–EIS.'"

■ Nor are we persuaded that because the Department imposed "[m]itigating [m]easures" relating to erosion control and noise during construction, its finding of nonsignificance was improper. Consideration of mitigating factors is not precluded in the context of a threshold determination.

WAC 197–10–355(3) provides:

> If the form is for a declaration of environmental significance, the lead agency may add . . . a listing of those environmental impacts which led to the declaration, together with a brief explanation of what measures, if any, could be taken to prevent or mitigate the environmental impacts of the proposal to such an extent that the lead agency would withdraw its declaration and issue a [proposed/final] declaration of nonsignificance.

In *Hayden v. Port Townsend, supra* at 880–81, a negative threshold determination was made after deficiencies disclosed by review and discussion of a proposed plan were remedied by the plan proponent. The court stated:

> While appellants challenge the [review] procedure used by the city engineer, under the circumstances the procedure appeals to us as eminently sensible. Where it is feasible, it appears reasonable to resolve potential environmental problems before a formal application is made for a building permit. The pertinent question is whether environmental factors were adequately considered before a final decision was made.

Brown correctly notes that the "remedies" considered in *Hayden* were agreed upon prior to the proponent's permit application and thus, technically, before the SEPA processes were triggered. However, in *Hayden,* the proponent had filed an environmental checklist which prompted the engineer's review of potential environmental impact before submitting its formal building permit application. The timing of the proponent's permit application should not be determinative of "[t]he pertinent question" of "whether environmental factors were adequately considered before a final decision was made", *Hayden v. Port Townsend, supra* at 881. The resolution of potential environmental problems pertaining to the nature of the completed project may indicate improper use of the threshold determination stage as an EIS–avoidance device. But we cannot conclude that the Department acted improperly by imposing "[m]itigating [m]easures" of erosion and noise controls designed only to

alleviate the environmental impact of the construction process.

Brown lastly contends the Department's negative threshold determination of environmental nonsignificance, which obviated the necessity of a full environmental impact statement, was clearly erroneous. We do not agree.

■■■ An environmental impact statement is required for "major actions significantly affecting the quality of the environment". RCW 43.21C.030(2)(c). Action "'significantly'" affects the environment "whenever more than a moderate effect on the quality of the environment is a reasonable probability." *Norway Hill Preservation & Protection Ass'n v. King County Council,* 87 Wn.2d 267, 278, 552 P.2d 674 (1976). We recognize, as did the Department, that construction of the proposed condominium will have some impact upon the surrounding environment. But we cannot conclude this impact entails other than a "moderate effect" upon the surrounding environment in an appropriately zoned and developed urban area such as this one. *See Richland Homeowner's Preservation Ass'n v. Young,* 18 Wn. App. 405, 568 P.2d 818 (1977) (negative threshold determination not "clearly erroneous" as to 83–unit apartment complex within the city of Richland). *Cf. Norway Hill Preservation & Protection Ass'n v. King County Council, supra* (negative threshold declaration was "clearly erroneous" as to 52–acre heavily wooded and unpopulated area transformed into a residential suburban neighborhood); *Swift v. Island County,* 87 Wn.2d 348, 552 P.2d 175 (1976) ("clearly erroneous" negative declaration as to a housing subdivision including area listed in the National Register of Historic Sites, seriously impacting bird life); *Sisley v. San Juan County,* 89 Wn.2d 78, 569 P.2d 712 (1977) ("clearly erroneous" negative declaration as to 94–slip marina and support facilities in a biologically unique and sensitive area). We conclude the Department's threshold declaration of environmental nonsignificance was not clearly erroneous.

The judgment is affirmed.

CALLOW and DURHAM, JJ., concur.

Reconsideration denied February 11, 1982.