[No. 10965-8-III.   Division Three.   July 30, 1991.]

PEASE HILL COMMUNITY GROUP, *Respondent*, v. THE COUNTY OF SPOKANE, ET AL, *Defendants*, DAN LOSHBAUGH, ET AL, *Appellants*.

*Donald C. Brockett, Prosecuting Attorney,* and *Robert B. Binger, Deputy; Daniel M. Danforth* and *Underwood, Campbell, Brock & Cerutti P.S.,* for appellants.

*Randall K. Gaylord* and *Randall & Danskin, P.S.,* for respondent.

MUNSON, J. — The Spokane County Board of Adjustment (Board) issued a mitigated determination of nonsignificance (MDNS) and conditional use permit for a woodwaste landfill. The Pease Hill Community Group (Pease Hill) appealed that action to the Superior Court. The Superior Court reversed the Board; the applicant, Dan Loshbaugh, appeals.

Dan Loshbaugh and Gregory Bell want to use their 22-acre property as a private woodwaste landfill. The property is zoned agricultural in north Spokane County and contains a large open pit previously used for mining quartz. A woodwaste landfill is a conditional use in the agricultural zone under Spokane County Zoning Ordi-

nance (SCZO) 4.24.260.[1] The comprehensive plan designates the property as rural.

In March 1988, Mr. Loshbaugh filed an application with the Spokane County Planning Department for a conditional use permit for a woodwaste landfill on the property. The proposed access to the project site was via Austin and Woolard Roads and 25 to 32 residences would have been directly affected by truck traffic. Furthermore, Austin and Woolard Roads are classified as country local access roads, rather than arterials.

Following public hearings, the zoning adjuster noted that no information was presented to indicate the landfill could have direct access to the nearby arterial, Monroe Road, and denied Mr. Loshbaugh's application for a conditional use permit. Mr. Loshbaugh appealed that decision to the Board.

The Board held an initial public hearing on the appeal November 16, 1988. Mr. Loshbaugh testified he had begun arrangements to access the site directly from Monroe Road. Testimony concerning the proposed landfill, as well as the alternate access route, was heard. No project opponents objected to consideration of the direct Monroe Road access, but several expressed opinions that the proposed access would not fully mitigate the impact of the project. They also continued to have concerns about area wells, fire hazard, dust, noise and traffic.

The Board continued the hearing to December 21, 1988, to consider the change in the access road. Pease Hill and 15 of its members, including William Slusser and Cherie Hall, had been present at the November 16, 1988, hearing at which the continuance was announced. Additional property owners of record, Sandy Sicilia and David

---

[1]SCZO 4.24.260 provides as follows:

"(a) Zone Permitted. Sanitary landfill, garbage and refuse dumps are conditional uses in the agricultural, manufacturing and mining zones.

"(b) Conditional Standards.

"(1) Minimum lot area is ten acres.

"(2) There shall be standards and specifications as prescribed by the county health department."

Guffin, were notified of the December 21 hearing date because their property was within 300 feet of the newly proposed access from Monroe Road.

At the December 21 hearing, the Board heard testimony on the proposed access as well as other concerns about the project. Pease Hill members testified extensively. On March 15, 1989, the Board approved Mr. Loshbaugh's application for a conditional use permit to operate the woodwaste landfill with access off Monroe Road. Access to the project from Austin and Woolard Roads was prohibited. Thirty-two conditions of approval were included in the decision as well as 10 mitigating measures set forth in the MDNS. On appeal the Superior Court reversed the Board based on inadequate notice and the Board's failure to designate the proposed project a major action thereby necessitating preparation of an environmental impact statement (EIS). RCW 43.21C-.030(2)(c).

Review of a superior court reversal of a final administrative decision is on the record of the administrative tribunal itself, not of the superior court. *Franklin Cy. Sheriff's Office v. Sellers*, 97 Wn.2d 317, 323-24, 646 P.2d 113 (1982), *cert. denied*, 459 U.S. 1106 (1983). The Board's decisions on procedural issues and zoning decisions, not implicating the State Environmental Policy Act of 1971 (SEPA), are reviewed under the arbitrary and capricious standard. *Ling v. Whatcom Cy. Bd. of Adj.*, 21 Wn. App. 497, 499, 585 P.2d 815 (1978). Under this standard, the reviewing court reverses only "willful and unreasoning action in disregard of facts and circumstances." *Washington Waste Sys., Inc. v. Clark Cy.*, 115 Wn.2d 74, 81, 794 P.2d 508 (1990). An error in judgment does not constitute arbitrary and capricious action. *Washington Waste Sys.*, at 81.

Pease Hill contends the notice for the November 16, 1988, hearing was defective because it did not state a new proposal would be discussed at the hearing. Notice of a hearing on an appeal to the Board is given pursuant to

RCW 36.70.850 and SCZO 4.25.070 and 4.24.010.[2] RCW 36.70.850 provides that "[a]t least ten days notice of the time and place shall . . . be given to the adverse parties of record in the case." SCZO 4.25.070 contains identical language. If a notice which complies with these provisions is given, and the actions of the Board are within its designated authority for such an appeal, sufficient notice has been given.

The identity of adverse parties of record was determined from those individuals who attended the hearing before the zoning adjuster. Those individuals were notified of the November 16 hearing. The notice contained the time and place of the hearing. Neither the statute nor the ordinance requires the purpose of the hearing to be contained in the notice. RCW 36.70.850; SCZO 4.25.070.[3]

The authority of the Board on appeal is designated in RCW 36.70.860 and SCZO 4.25.080. Both provide that the Board may

> reverse or affirm, wholly or in part, or may modify the order, requirement, decision or determination appealed from, and may make such order, requirement, decision or determination as should be made and, to that end, shall have all the powers of the officer from whom the appeal is taken, insofar as the decision on the particular issue is concerned.

---

[2]RCW 36.70.850 provides in part:

"Upon the filing of an appeal from an administrative determination, or from the action of the zoning adjustor, the board of adjustment shall set the time and place at which the matter will be considered. At least a ten day notice of such time and place together with one copy of the written appeal, shall be given to the official whose decision is being appealed. At least ten days notice of the time and place shall also be given to the adverse parties of record in the case."

SCZO 4.24.010(a) provides as follows:

"The conditional uses set forth in this chapter, because of their public convenience and necessity and their effect upon the neighborhood and the comprehensive plan may be permitted only upon the approval of the board of adjustment after due notice and public hearing, and a finding that such conditional use will not be detrimental to the general comprehensive plan and surrounding property."

[3]*Glaspey & Sons, Inc. v. Conrad*, 83 Wn.2d 707, 521 P.2d 1173 (1974) involves zoning and is distinguishable in that different notice statutes, RCW 36.70.590 and .630 apply; RCW 36.70.850 also applies here.

Thus, consideration of the modification of Mr. Loshbaugh's proposal was within the authority of the Board. The notice for the November 16, 1988, hearing was sufficient.

■ Pease Hill argues the notice for the December 21, 1988, hearing should have complied with RCW 36.70.840[4] because the hearing was not a continuance of the appeal but an initial hearing on an application for a conditional use permit. The Board designated the December 21, 1988, hearing a continuance of the hearing of November 16. It is within the Board's authority to modify the zoning adjuster's order on appeal; thus, consideration of the Monroe Road access at a continuance of the hearing on appeal did not render RCW 36.70.840 applicable.

Notice of a continuance is not specifically addressed by the SCZO or RCW 36.70.850. The notice of the initial hearing on the appeal must advise all adverse parties of record of the hearing. Contrast RCW 36.70.840, which requires notice must be *mailed* to specific property owners. RCW 36.70.850 does not specifically require mailing of a formal notice.

■ Procedural due process requires notice which is reasonably calculated under the circumstances to apprise affected parties of the pending action and to afford them an opportunity to present their objections. *Chaussee v. Snohomish Cy. Coun.*, 38 Wn. App. 630, 642, 689 P.2d 1084 (1984). The Board notified those who attended the hearings before the zoning adjuster of the November 16 hearing on appeal. Those who attended the November 16 hearing, which included officers and directors of Pease Hill, received actual notice of the continuance of that hearing. In addition, the Board mailed a notice of the

---

[4]RCW 36.70.840 provides as follows:

"Upon the filing of an application for a conditional use permit . . . the board of adjustment shall set the time and place for a public hearing on such matter, and written notice thereof shall be addressed through the United States mail to all property owners of record within a radius of three hundred feet of the exterior boundaries of subject property. The written notice shall be mailed not less than twelve days prior to the hearing."

December 21, 1988, hearing to individuals who owned property within 300 feet of the applicable portion of Monroe Road. The record indicates notice was mailed to Sandy Sicilia and David Guffin.

Several members of Pease Hill, the appellant here, attended both hearings and provided the Board with well prepared testimony and evidence. Pease Hill has shown no prejudice from not receiving written notice of the December meeting. The notice was sufficient to meet the requirements of due process and RCW 36.70.850; there was no error.

Pease Hill contends the Board's approval of a conditional use permit for the woodwaste landfill is arbitrary and capricious in that the project is detrimental to the general comprehensive plan and surrounding property. We disagree.

■ A sanitary landfill is one of the conditional uses allowed in the agricultural zone. SCZO 4.24.260. Pease Hill argues the permit should have been denied pursuant to SCZO 4.24.010 because the Board failed to identify a specific need for the project. To the contrary, the language of the ordinance (see footnote 2) reflects a legislative finding that the listed conditional uses advance the "public convenience and necessity". Washington courts do not require a specific finding of need. *McNaughton v. Boeing*, 68 Wn.2d 659, 664, 414 P.2d 778 (1966).

Pease Hill also contends the Board's approval of the project was arbitrary and capricious because the project places an industrial type activity in the rural setting and even with direct Monroe Road access it will decrease land values, increase traffic, create noise, and raise concerns about the integrity of area wells.

To issue a conditional use permit the Board must find the project will not be detrimental to the general comprehensive plan and surrounding property. SCZO 4.24.010. The rural category of the comprehensive plan does not specifically prohibit woodwaste landfills. It does require compliance with various plans, policies and regulations

before a land use is approved. Spokane County Comprehensive Plan § 4.7.3.

The transportation element of the comprehensive plan provides that Monroe Road is designated as a county principal arterial. Monroe is designed to handle the truck traffic. By eliminating access on local roads, Mr. Loshbaugh brought the project into compliance with the transportation element of the comprehensive plan.

The record does not support the contention that the project, as mitigated, will have significant detrimental effect on the surrounding property. The county engineer's office concluded the expected truck traffic will not interfere with the public road; the reduced speed limit and the requirement that exhaust brakes not be used on private haul roads will minimize noise. There is no evidence in the record to support the claimed reduction in property values. The Board also concluded the design of the leachate system, as well as the rules and regulations of the Spokane County Health District and the Department of Ecology, are sufficient to protect the wells and groundwater in the area. Both the Spokane County Health District and the Department of Ecology were contacted prior to issuance of the permit and neither agency recommended the conditional use permit be withheld. The Department of Ecology indicated its concerns with seepage would be dealt with in the solid waste handling permit.

■■ Although the project, even as mitigated, will alter the surrounding area, it is unrealistic to expect no effect from development. "The law does not require that all adverse impacts be eliminated; if it did, no change in land use would ever be possible." *Maranatha Mining, Inc. v. Pierce Cy.*, 59 Wn. App. 795, 804, 801 P.2d 985 (1990). Further, strict adherence to the comprehensive plan is not required; the plan is a blueprint or guide to adoption and

application of zoning regulations. *Barrie v. Kitsap Cy.*, 93 Wn.2d 843, 849, 613 P.2d 1148 (1980). The record supports the Board's findings and conclusions. There was no error.

■ Pease Hill's final contention is that the Board erred in issuing an MDNS with addendum rather than requiring the preparation of an EIS prior to the issuance of a permit. Issuance of a declaration of nonsignificance implicates SEPA. Review of decisions by the Board based on the environmental considerations under SEPA is under the clearly erroneous standard. *Cougar Mt. Assocs. v. King Cy.*, 111 Wn.2d 742, 749, 765 P.2d 264 (1988). The Board's SEPA review must be affirmed unless "the reviewing court is firmly convinced in light of the record and the public policy contained in RCW 43.21C.010 that a mistake has been committed." (Footnotes omitted.) *West 514, Inc. v. Spokane Cy.*, 53 Wn. App. 838, 844, 770 P.2d 1065, *review denied*, 113 Wn.2d 1005 (1989). In reviewing the SEPA decision, the reviewing court recognizes and defers to the expertise of the administrative agency. *West 514*, at 845.

■ SEPA requires that an EIS statement be included "in every recommendation or report on proposals for legislation and other major actions significantly affecting the quality of the environment . . .". RCW 43.21C.030(2)(c). A governmental agency's approval of private projects by the granting of permits constitutes "action" within the meaning of SEPA. *Eastlake Comm'ty Coun. v. Roanoke Assocs., Inc.*, 82 Wn.2d 475, 489, 513 P.2d 36, 76 A.L.R.3d 360 (1973).

A key step under SEPA is the decision whether to require preparation of an EIS before the action takes place. This decision is known as the "threshold determination". Negative threshold determinations or determinations of nonsignificance (DNS) are determinations that an EIS is not mandated by RCW 43.21C.030.

■ "[T]he record of a negative threshold determination by a governmental agency must 'demonstrate that environmental factors were considered in a manner sufficient to amount to prima facie compliance with the procedural requirements of SEPA.'" *Sisley v. San Juan Cy.*, 89 Wn.2d 78, 85, 569 P.2d 712 (1977) (quoting *Juanita Bay Vly. Comm'ty Ass'n v. Kirkland*, 9 Wn. App. 59, 73, 510 P.2d 1140, *review denied*, 83 Wn.2d 1002 (1973)). The determination must be based upon information reasonably sufficient to determine the environmental impact of a proposal. *Brown v. Tacoma*, 30 Wn. App. 762, 766, 637 P.2d 1005 (1981).

A review of the record demonstrates that the Board did a complete and thorough review of the project prior to issuing the final MDNS and conditional use permit. An environmental checklist was submitted as required by WAC 197-11-315(2). A DNS was issued March 8, 1988, and mailed to 14 agencies. Comments on the DNS were received from several of those agencies and based on those comments the zoning adjuster withdrew the DNS on April 14, 1988. Mr. Loshbaugh, responding to the environmental concerns which had been raised, and the Spokane Planning Department, pursuant to WAC 197 -11-335, sought additional information from various agencies. Significantly, no agency recommended an EIS be required. On July 21, 1988, an MDNS was issued pursuant to WAC 197-11-350. It set forth 10 mitigating measures. On September 14, 1988, the zoning adjuster held a public hearing and issued a summary decision on October 10, 1988, denying the conditional use permit. This determination was appealed and the Board held two public hearings on that appeal, reversed the zoning adjuster, and granted the permits. The record of those hearings further demonstrates an examination of SEPA policies and environmental concerns. The Board's decision not to require an EIS is not clearly erroneous.

Reversed and remanded for entry of judgment affirming the Board's action.

GREEN, C.J., and THOMPSON, J., concur.