[No. 67785-9. En Banc.]
Argued November 18, 1999. Decided July 20, 2000.

WENATCHEE SPORTSMEN ASSOCIATION, *Respondent*, v. CHELAN COUNTY, *Defendant*, STEMILT LAND COMPANY, ET AL., *Appellants*.

---

170

*Stephen M. Rummage* and *Katherine K. Laird* (of *Davis Wright Tremaine*); and *J. Patrick Aylward* (of *Jeffers, Danielson & Foreman*), for appellants.

*David S. Mann* (of *Bricklin & Gendler*), for respondent.

Guy, C.J. — Wenatchee Sportsmen Association (WSA) challenges Chelan County's approval of Stemilt Land Company's (Stemilt) residential development project called the Highlands. Finding that Stemilt's project was inconsistent with the County's interim urban growth area (IUGA) regulation, adopted under the Growth Management Act (GMA), chapter 36.70A RCW, the trial court granted WSA's Land Use Petition Act (LUPA), chapter 36.70C RCW, petition and reversed the County's approval. Stemilt appeals to this court and focuses its claims upon WSA's failure to oppose in a timely fashion the County's earlier decision to rezone Stemilt's property to permit residential development at a certain density.

We reverse the trial court. A decision to rezone a specific site is not appealable to a growth management hearings board (GMHB) because site-specific rezones are project

permits and hence not development regulations under the GMA. WSA's failure to file a timely LUPA challenge to the rezone bars it from collaterally challenging the validity of the rezone in this action opposing the project application. The issue of whether the rezone should have allowed urban growth outside of an IUGA had to be raised in a LUPA petition challenging the rezone decision itself. Because the zoning requirements for the property were established by the rezone approval, the only reviewable question in this case is whether the project application complies with those zoning requirements. Stemilt's proposed project meets the density and other requirements of its zoning classification. We hold that with respect to the applicable zoning ordinances and the GMA, the County's decision to approve the Highlands project was neither an erroneous interpretation of the law nor an erroneous application of law to the facts.

The trial court also received evidence concerning the County's decision under the State Environmental Policy Act of 1971 (SEPA), chapter 43.21C RCW, to issue a mitigated determination of nonsignificance (MDNS) rather than require that an environmental impact statement (EIS) be prepared for the Highlands project. Because the trial court based its decision to reverse the County's approval of the Highlands project on its interpretation of the GMA, it did not reach WSA's SEPA claim. We remand this case to the trial court for a determination of whether the County's decision to issue an MDNS is clearly erroneous under RCW 36.70C.130(1)(d).

## FACTS

In 1990 the Legislature enacted chapter 36.70A RCW, popularly known as the Growth Management Act. Counties required to plan under the GMA were directed to adopt comprehensive plans under the chapter and development regulations which are consistent with and implement the comprehensive plan. RCW 36.70A.040(3). A 1993 amendment to the GMA required counties which had to plan

under the GMA to adopt development regulations designating IUGAs. RCW 36.70A.110. Chelan County adopted its IUGA in 1993. Br. of Appellants at 3.

The property in question lies on a square-mile section of land owned by Stemilt and is approximately eight miles southwest of the city of Wenatchee. *Id*. Stemilt concedes that the property lies outside the IUGA established by the County. *Id*. In 1996, the County rezoned Stemilt's property to recreational residential (RR-1), a zoning classification within which residential subdivisions are permitted, subject to the limitations listed in the zoning code. *Id*.; CHELAN COUNTY CODE 11.24.090-.150. In an RR-1 zoning district the minimum lot size for single-family dwellings is one acre. *Id*. 11.24.140(a). WSA concedes that it did not challenge the RR-1 zoning at the time it was adopted. Br. of Resp't at 13.

On August 1, 1996, not long after its property was rezoned, Stemilt submitted its plat application for the Highlands to the County for review. Br. of Appellants at 4. The Highlands, as scaled back in response to concerns the Department of Fish and Wildlife had about elk herd migration, consists of 205 residential lots with an average clustered lot size of 1.36 acres. *Id*. at 4-5; Clerk's Papers at 40. Because 350 acres or 55 percent of the site is dedicated to open space, the gross average density of the project is one dwelling unit per 3.12 acres. Br. of Appellants at 5. On August 31, 1997, the County issued an MDNS under SEPA and decided that Stemilt did not need to prepare a full EIS. Br. of Appellants at 6; Clerk's Papers at 73. On March 24, 1998, the Board of Chelan County Commissioners voted to approve the subdivision, and Chelan County issued a revised Notice of Decision on April 6, 1998. Br. of Resp't at 7; Clerk's Papers at 40-51.

WSA challenged the approval of the Highlands development by filing a timely LUPA petition in Chelan County Superior Court. Br. of Resp't at 7. The trial court agreed with WSA and found that the County had erred in approv-

ing Stemilt's application. Clerk's Papers at 160. The court found that while the Highlands apparently complies with the RR-1 zoning ordinance, the project is incompatible with the GMA's restrictions on urban growth outside of the IUGA established by the County. Clerk's Papers at 160. Because it reversed the decision of the County on those grounds, the trial court did not reach the issue of whether the County's MDNS was adequate. *Id.* Stemilt sought and we granted direct review of the trial court's decision.

## ISSUES

(1) Does a party's failure to timely appeal a county's approval of a site-specific rezone bar it from challenging the validity of the rezone in a later LUPA challenge to county approval of a plat application to develop the property?

(2) Was Chelan County's decision to issue an MDNS for the Highlands project instead of requiring that an environmental impact statement be prepared clearly erroneous?

## STANDARD OF REVIEW

 Under LUPA a court may grant relief from a local land use decision only if the party seeking relief has carried the burden of establishing that one of six standards listed in RCW 36.70C.130(1) has been met. The potentially relevant standards for this case are as follows:

> (b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;

> (c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court; [or]

> (d) The land use decision is a clearly erroneous application of the law to the facts[.]

RCW 36.70C.130(1). Statutory construction is a question of law reviewed de novo under the error of law standard. *See Waste Management of Seattle, Inc. v. Utilities & Transp.*

*Comm'n*, 123 Wn.2d 621, 627, 869 P.2d 1034 (1994). In reviewing an administrative decision, an appellate court stands in the same position as the superior court. *Biermann v. City of Spokane*, 90 Wn. App. 816, 821, 960 P.2d 434 (1998) (citing *Wilson v. Employment Sec. Dep't*, 87 Wn. App. 197, 201, 940 P.2d 269 (1997)). We review the agency's factual findings under the substantial evidence standard and conclusions of law de novo. *Biermann*, 90 Wn. App. at 821. Under the substantial evidence standard, there must be a sufficient quantum of evidence in the record to persuade a reasonable person that the declared premise is true. *Wilson*, 87 Wn. App. at 200-01 (citing *Penick v. Employment Sec. Dep't*, 82 Wn. App. 30, 37, 917 P.2d 136, *review denied*, 130 Wn.2d 1004, 925 P.2d 989 (1996)). A decision to issue an MDNS may be reviewed under the clearly erroneous standard. *See Anderson v. Pierce County*, 86 Wn. App. 290, 302, 936 P.2d 432 (1997). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the record is left with the definite and firm conviction that a mistake has been committed. *Id.* (citing *Norway Hill Preservation & Protection Ass'n v. King County Council*, 87 Wn.2d 267, 274, 552 P.2d 674 (1976)). For the MDNS to survive judicial scrutiny, the record must demonstrate that environmental factors were considered in a manner sufficient to amount to prima facie compliance with the procedural requirements of SEPA and that the decision to issue an MDNS was based on information sufficient to evaluate the proposal's environmental impact. *Id.* at 302 (citing *Pease Hill Community Group v. County of Spokane*, 62 Wn. App. 800, 810, 816 P.2d 37 (1991)). Under LUPA a court reviews the decision to issue an MDNS under any one of the six standards set forth in RCW 36.70C.130(1). Where the question before a court is whether the law was correctly applied to the facts, RCW 36.70C.130(1)(d) applies: "The land use decision is a clearly erroneous application of the law to the facts."

## DISCUSSION

Chelan County made two separate decisions with respect to the Highlands: the 1996 site-specific rezone of the property to RR-1 and the 1998 approval of the Highlands development proposal. WSA challenged the latter decision by filing a LUPA petition in superior court; it did not appeal the earlier decision to rezone the property. Stemilt makes two arguments that WSA's failure to challenge the decision to rezone means that it cannot challenge the validity of that decision in a later LUPA petition. Br. of Appellants at 9. Stemilt's first argument is that because WSA failed to exhaust its remedies by challenging the rezone before the GMHB under the GMA, it cannot now claim that the RR-1 zoning improperly permitted urban growth outside the IUGA. *Id.* at 11. Stemilt's other argument is that even if this court concludes that WSA exhausted its administrative remedies, WSA would be barred from challenging the rezoning under LUPA because it failed to file its LUPA petition within the required 21 days after the rezone was approved. *Id.* at 16-17 n.10.

We first address Stemilt's argument that WSA's failure to challenge the rezone before a GMHB means that it failed to exhaust its administrative remedies. In order to bring a land use petition under LUPA, the petitioner must have exhausted his or her administrative remedies to the extent required by law. RCW 36.70C.060. Stemilt claims WSA needed to appeal the County's rezone decision to the GMHB in order to meet LUPA's exhaustion requirement.

Stemilt's claim is correct only if approval of a site-specific rezone is the kind of decision that must be appealed to a GMHB rather than to a superior court through a LUPA petition. Except as provided in GMA, RCW 36.70A.295, LUPA does not allow direct judicial review of land use decisions that must go before a GMHB: "This chapter [LUPA] does not apply to . . . [j]udicial review of . . . [l]and use decisions of a local jurisdiction that are subject to review by a quasi-judicial body created by state law, such as

the shorelines hearings board or the growth management hearings board[.]" RCW 36.70C.030(1)(a)(ii). If a land use decision must be appealed to a GMHB, there is no direct judicial review of the decision available unless all parties agree to direct review in superior court. RCW 36.70A.295. Otherwise, superior court review is available only after a GMHB has rendered a final decision. RCW 36.70A.300.

▮▮▮▮ A party must initially appeal a land use decision of the kind involved here to either a GMHB or to superior court; the GMA and LUPA determine which forum is the exclusive one to consider a party's grievance. If a GMHB does not have jurisdiction to consider a petition, it must be filed in superior court under LUPA. The GMA in turn limits the kinds of matters that GMHBs may review: "A growth management hearings board shall hear and determine only those petitions alleging . . . [t]hat a state agency, county, or city planning under this chapter is not in compliance with the requirements of this chapter . . . ." RCW 36.70A.280(1)(a). Another provision of the GMA spells out in greater detail the subject matter of each petition: "All petitions relating to whether or not an adopted comprehensive plan, development regulation, or permanent amendment thereto, is in compliance with the goals and requirements of this chapter . . . must be filed within sixty days after publication . . . ." RCW 36.70A.290(2). From the language of these GMA provisions, we conclude that unless a petition alleges that a comprehensive plan or a development regulation or amendments to either are not in compliance with the requirements of the GMA, a GMHB does not have jurisdiction to hear the petition.

The GMA defines what a "development regulation" is and, more helpfully, what it is not: "A development regulation does not include a decision to approve a project permit application, as defined in RCW 36.70B.020, even though the decision may be expressed in a resolution or ordinance of the legislative body of the county or city." RCW 36.70A.030(7). The local project review statute defines "project permit application" as including, among other

things, "site-specific rezones authorized by a comprehensive plan or subarea plan." RCW 36.70B.020(4). The items listed under "project permit application" are specific permits or licenses; more general decisions such as the adoption of a comprehensive plan or subarea plan are not approvals of project permit applications. RCW 36.70B.020. The conclusion to be drawn from these provisions is that a site-specific rezone is not a development regulation under the GMA, and hence pursuant to RCW 36.70A.280 and .290, a GMHB does not have jurisdiction to hear a petition that does not involve a comprehensive plan or development regulation under the GMA.[1] *See also Citizens for Mount Vernon v. City of Mount Vernon*, 133 Wn.2d 861, 868, 947 P.2d 1208 (1997).

 Stemilt argues that the rezone was a development regulation and not a project permit because Chelan County does not have a comprehensive plan. Br. of Appellants at 16-17 n.10. Hence, the rezone was appealable to a GMHB. *Id.* In order for this view to prevail, the Local Project Review statute would have to imply the added phrase in brackets: " 'Project permit' or 'project permit application' means any land use or environmental permit or license required from a local government for a project action, including but not limited to . . . site-specific rezones authorized by a comprehensive plan or subarea plan [under chapter 36.70A RCW (GMA)]." RCW 36.70B.020(4). Unless this court gives effect to the implied phrase, the rezone in this case is a "project permit application" because it was authorized by a comprehensive plan. But Chelan County has a pre-GMA comprehensive plan enacted in 1958. CHELAN COUNTY CODE 10.12.010. The Chelan County Planning Department's Staff Report recommending that the rezone be approved concludes that approval would be consistent with that comprehensive plan. Administrative Record (AR) 226, at 6. Thus, the rezone of Stemilt's property

---

[1] Challenges to a decision concerning a site-specific rezone should be brought by means of a LUPA petition in superior court. To the extent that this conclusion conflicts with the view we expressed in *Torrance v. King County*, 136 Wn.2d 783, 966 P.2d 891 (1998), our opinion here controls.

is a site-specific rezone authorized by a comprehensive plan, but not a comprehensive plan under the GMA.

One could argue that chapter 36.70B RCW was meant to be an adjunct to the GMA and that the structural dependency of the later chapter upon the earlier indicates that definitions in the GMA should also apply in this chapter on local project review. Since the definition of "comprehensive plan" in the GMA is "a generalized coordinated land use policy statement . . . that is adopted pursuant to this chapter" (RCW 36.70A.030(4)), "comprehensive plan" in chapter 36.70B RCW should also mean a GMA plan. However, a provision in the local project review chapter expressly says that its procedures may be applied to non-GMA planning as well as planning under GMA. RCW 36.70B.150, captioned "Local governments not planning under the growth management act may use provisions" says, "A local government not planning under RCW 36.70A.040 may incorporate some or all of the provisions of RCW 36.70B.060 through 36.70B.090 and 36.70B.110 through 36.70B.130 into its procedures for review of project permits or other project actions." Therefore, applied to the definition of "project permit," this provision indicates that "comprehensive plan" can be a plan both under the GMA or under other planning statutes. Given the language of RCW 36.70B.150, if the Legislature wished to restrict "comprehensive plan" to only GMA plans, it should have written RCW 36.70B.020(4) to say "site-specific rezones authorized by a comprehensive plan or subarea plan [under chapter 36.70A RCW (GMA), notwithstanding RCW 36.70B.150]." The Legislature did not add those words and we would need compelling reasons to imply them.

■ Stemilt's second argument is more persuasive: even if there were no GMHB remedy for WSA to exhaust, it is still barred from challenging the decision to rezone because it failed to file its LUPA petition within the required 21 days after the rezone decision was made. Under LUPA "[a] land use petition is barred, and the court may not grant review, unless the petition is timely filed . . . ." RCW 36.70C.040(2).

The petition is timely if it is filed within 21 days of the issuance of the land use decision. RCW 36.70C.040(3). WSA did not file a LUPA petition when the decision to rezone was made in 1996.[2] *See* Br. of Appellants at 13. Because RCW 36.70C.040(2) prevents a court from reviewing a petition that is untimely, approval of the rezone became valid once the opportunity to challenge it passed. It was too late for WSA to challenge approval of the rezone in a LUPA petition filed in 1998. The only zoning-related issue the court can consider under the LUPA challenge to the development proposal is whether Stemilt's plat application complies with the applicable zoning ordinances. As we noted above, it does.

WSA argues that the validity of the rezone is irrelevant to its claims because the zoning ordinance is only one of the applicable land use laws in effect. Br. of Resp't at 13. A subdivision which meets the minimum lot size requirement of the zoning ordinance, it argues, must also comply with other applicable laws. *Id.* at 14. WSA claims, and the trial court agreed, that the Highlands project constitutes impermissible urban growth outside of the adopted urban growth boundary. Br. of Resp't at 21; Clerk's Papers at 156, 158. However, the issue of whether the RR-1 zoning allows for urban growth outside of an IUGA should have been raised in a timely LUPA challenge to the *rezone*, not in the later challenge to the plat. At that time a court reviewing the rezone decision could have considered whether the minimum density allowed by the RR-1 district was compatible

---

[2] In order to challenge the County's decision to rezone Stemilt's property, WSA would have had to file a LUPA petition and not a writ of certiorari. LUPA replaces the writ of certiorari with a LUPA petition: "This chapter [LUPA] replaces the writ of certiorari for appeal of land use decisions and shall be the *exclusive means* of judicial review of land use decisions," except for certain exclusions, among them decisions subject to review by GMHBs. RCW 36.70C.030(1) (emphasis added). The language of the LUPA chapter does not limit "land use decisions" only to those made under the GMA. *See* RCW 36.70C.020(1). The statute lists an application for a project permit as one kind of land use decision. *See* RCW 36.70C.020(1)(a). A site-specific rezone is a project permit under RCW 36.70B.020(4) and, as we have indicated above, the rezone may be one under either a GMA or a non-GMA comprehensive plan. Thus, even though Chelan County had no GMA comprehensive plan in place in 1996, WSA was required by LUPA to file a LUPA petition in order to contest the County approval of the rezone.

with the IUGA. If there is no challenge to the decision, the decision is valid, the statutory bar against untimely petitions must be given effect, and the issue of whether the zoning ordinance is compatible with the IUGA is no longer reviewable.

The only issue that can be raised concerning the rezone is whether the plat application conforms to the zoning requirements. WSA did not argue in the court below and does not argue here that the Highlands project violates the County's RR-1 zoning ordinance. Clerk's Papers at 150; Br. of Resp't at 14. Therefore, with respect to the issue of whether the Highlands project violates the GMA, we hold that the County did not err in its decision. We do not need to reach the other GMA issues raised by the parties.

WSA also challenged under SEPA the County's issuance of an MDNS for the Highlands. The trial court received evidence on the SEPA issue beyond the record provided by the County. *See* Clerk's Papers at 425-35; 485-655. Because it did not address this claim, we remand to the trial court to consider whether the County's decision to issue an MDNS was clearly erroneous.

## CONCLUSION

Chelan County's decision to approve Stemilt's Highlands project is neither an erroneous interpretation of the GMA nor a clearly erroneous application of the GMA to the facts. We reverse the judgment of the trial court and remand for consideration of whether the County's issuance of an MDNS for the Highlands was clearly erroneous.

SMITH, JOHNSON, MADSEN, ALEXANDER, SANDERS, and IRELAND, JJ., and AGID, J. Pro Tem., concur.

TALMADGE, J. (dissenting) — The majority decision permits Chelan County to flout the Growth Management Act (GMA) by allowing urban development outside an interim urban growth boundary. Rather than interpreting the law in a

way that upholds the goals of the GMA and the intent of the Legislature, the majority finds yet another way to allow what the GMA was enacted to prevent—sprawling development. *See, e.g., Association of Rural Residents v. Kitsap County*, 141 Wn.2d 185, 4 P.3d 115 (2000); *Skagit Surveyors & Eng'rs, LLC v. Friends of Skagit County*, 135 Wn.2d 542, 958 P.2d 962 (1998). I dissent.

Chelan County adopted its interim urban growth area (IUGA) in 1993. Three years later, it enacted a zoning ordinance for a square-mile section of land *outside* the interim urban growth boundary that permitted development at a density of one single-family dwelling unit per acre. Shortly after the zoning change, Stemilt, the owner of that newly zoned land, submitted an application for a binding site plan under RCW 58.17.035. The County approved the site plan. The Wenatchee Sportsmen Association (WSA) filed a petition under the Land Use Petition Act (LUPA) (chapter 36.70C RCW) challenging Chelan County's approval of the plan. The trial court found Stemilt's proposed development was urban in character and therefore not in compliance with the GMA because it was outside the interim urban growth boundary.[3]

The majority reverses the trial court, however, concluding that even though the ordinance was in violation of the GMA, because nobody had ever challenged the legality of the ordinance, it was the applicable law when Stemilt applied for its binding site plan. Rather than attacking the site plan approval, the majority holds, WSA should have challenged the zoning ordinance when it was first enacted. But, under the LUPA time limits, the petition came too late to attack the zoning ordinance. Thus the majority permits Chelan County to flout the GMA.

---

[3] Stemilt assigned error to the trial court's holding and argues at some length that its proposed development is actually rural in nature. Br. of Appellant at 2, 32-37. Because the proposed density of the development is one dwelling unit per 1.36 acres, the development is definitely not rural. The Washington State Department of Community, Trade, and Economic Development (CTED) Rural Element Guide states that densities of "less than 1 unit per 10 or 20 acres . . . should predominate in rural areas." *Smith v. Lewis County*, No. 98-2-0011c, 1999 WL 187571, at *2 (Western Wash. Growth Mgmt. Hr'gs Bd., Apr. 5, 1999).

The LUPA grants relief if the "land use decision is an erroneous interpretation of the law," RCW 36.70C.130(1)(b), or if the "land use decision is a clearly erroneous application of the law to the facts." RCW 36.70C.130(1)(d). The majority looks woodenly only to the zoning ordinance and concludes the county did not err in granting the permit application despite the illegality of the zoning ordinance. In other words, legal or illegal, the zoning ordinance on the books is the only development regulation we may consult with reference to the binding site plan application. The majority simply ignores the GMA.

The GMA did not direct Chelan County where to place its IUGA; its placement was purely a local decision. Presumably, Chelan County could have snaked the IUGA boundary out from Wenatchee to encompass the proposed development, but chose not to. By approving the Stemilt plat application, however, the county contravened its own IUGA regulation. But because the regulation was in response to a state law requirement,[4] that regulation has the force of state law. Any local ordinance contrary to state law must fall. *See* WASH. CONST. art. XI, § 11; *Weden v. San Juan County*, 135 Wn.2d 678, 693, 958 P.2d 273 (1998).

Because the plat approval was in violation of controlling state law—the GMA—it was "an erroneous interpretation of the law" pursuant to the LUPA and subject to the relief the trial court granted. To hold otherwise is to permit Chelan County to disregard the law its elected officials swore a solemn oath to uphold, and to endorse the sprawling development the people of Washington have sought to contain since the passage of the GMA 10 years ago.

This Court has been nothing less than intrepid in correcting what it perceives to be erroneous land use decisions of local jurisdictions. *See, e.g., Mission Springs, Inc. v. City of Spokane*, 134 Wn.2d 947, 954 P.2d 250 (1998); *Hayes v. City of Seattle*, 131 Wn.2d 706, 934 P.2d 1179, 943 P.2d 265 (1997); *Sintra, Inc. v. City of Seattle*, 119 Wn.2d 1, 829 P.2d

---

[4] RCW 36.70A.110(5) requires each county to "adopt development regulations designating interim urban growth areas."

765 (1992). We should be no less fearless in correcting the flagrant disregard for the law that occurred in this case. I would affirm the trial court.