[No. 35038-2-I.    Division One.    July 31, 1995.]

BASS PARTNERSHIP, *Appellant*, v. KING COUNTY, *Respondent.*

*Wilmar H. Williamson, Eric R. Hultman*, and *Dann, Radder, Williamson & Meacham*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Susan M. Alexander, Deputy*, for respondent.

BECKER, J. — Bass Partnership appeals a King County order requiring Bass to obtain building permits before placing and occupying portable mini-warehouses on its commercial property. We affirm.

Bass owns a 3.82-acre parcel of land in unincorporated King County. In 1985, Bass began locating warehouses on the site for the purpose of operating a mini-storage business. The warehouses are ten- by twenty-foot structures; they are mounted on timber footings and may be moved with a forklift. Bass manufactured the warehouses at another location under an insignia issued by the State Department of Labor and Industries (DLI). *See* RCW 43.22.455.

In April of 1986, the County cited Bass for "Construction of Mini-Warehouse . . . without the permits and inspections." Bass later submitted a building permit application. The County canceled the application, finding that Bass had failed to submit the required documentation.

Bass submitted a second permit application in December 1989. After reviewing the application, the County informed Bass that it would not be approved unless he agreed to dedicate a twelve-foot right of way along an adjacent county road. Believing this requirement was unfair and unconstitutional, Bass withdrew the permit application in March 1993.

On March 31, 1993, the Environmental Division of the Department of Development and Environmental Services (DDES) sent Bass a Notice of King County Code Violation and Abatement Order. The notice stated in part:

YOU ARE NOW ORDERED TO CORRECT THE CODE VIOLATIONS LISTED BELOW:

1. The placement and occupancy of mini-warehouses . . . without the required permit(s) and inspection approvals.

CODE AND SECTION:
Chapters 21.34, 21.68 and 16.04 King County Code Section 301 Uniform Building Code

TO BRING THIS PROPERTY INTO COMPLIANCE:

1. Submit an application for the required building permit(s) for the mini-warehouse . . . OR remove all structures by May 30, 1993.

Bass appealed the notice and order to the King County Zoning and Subdivision Hearing Examiner. Public hearings were held on July 22 and September 9, 1993. On September 22, 1993, the Examiner issued a written decision denying the appeal. Bass appealed to King County Superior Court by writ of certiorari. The court dismissed the writ, and this appeal followed.

## JURISDICTION

Bass first contends that the Zoning and Subdivision Hearing Examiner did not have jurisdiction to hear his appeal because it concerned a building code violation. Bass contends that such appeals must be heard by a special board of appeals created by the Uniform Building Code. UBC 204(a) provides in part:

In order to hear and decide appeals of orders, decisions or determinations made by the manager to the application of this code, there shall be and is hereby created a board of appeals consisting of thirteen members who are qualified by experience and training to pass upon matters pertaining to building construction.

Bass did not raise this argument before the hearing examiner.

■ We reject Bass' jurisdictional argument for two reasons. First, UBC 204(a) does not, on its face, grant the board of appeals *exclusive* jurisdiction over all appeals concerning building permit requirements. The County plausibly maintains that the board of appeals only hears matters pertaining to building *construction.* Second, the notice and order in this case alleged that Bass needed to obtain a certificate of occupancy under King County Code (KCC) 21.68.010, in addition to the building permit under UBC 301. The certificate of occupancy requirement is enforced through Title 23 of the King County Code, which includes the mechanism for appeals to the Zoning and Subdivision Hearing Examiner. KCC 21.69.010; 23.12.060(A). Where, as here, the given project requires more than one county permit or approval,

the hearing examiner may in his discretion order a consolidation of and conduct the required public hearings to avoid unnecessary costs or delays. Decisions of the examiner to order and conduct consolidated hearings shall be final in all cases.

KCC 20.24.140. Had Bass raised his jurisdictional argument below, the Examiner could have consolidated the hearings and proceeded to exercise jurisdiction over the appeal, notwithstanding any objection based on RCW 204(a). Bass' failure to raise this argument below precludes any contention that the Examiner acted outside of its jurisdiction.

## PREEMPTION

■ Bass next contends that DLI approval of his warehouses preempted the County's asserted authority to

impose permit requirements. Bass relies on RCW 43.22.455(1), which provides that once a structure has gained DLI approval, the structure "shall be deemed to comply with any laws, ordinances or regulations enacted by any city or county . . . which govern the manufacture and construction of . . . factory built commercial structures . . . ."

As the County points out, RCW 43.22.455(1) only preempts regulation of "the manufacture and construction" of prefabricated structures. Regulation of matters not pertaining to manufacture or construction is left to the County. RCW 43.22.460 provides:

> Local land use requirements . . . site development and property line requirements, and review and regulation of zoning requirements are specifically reserved to local jurisdictions notwithstanding anything contained in RCW 43.22.450 through 43.22.490.

*See also* WAC 296-150A-095(1) (An owner "must obtain the approval of the local enforcement agency for each installation of a factory-built structure at a building site."); UBC 5006(d) ("Placement of prefabricated assemblies at the building site shall be inspected by the building official to determine compliance with this code."); UBC 104(e) ("No person shall move within or into the unincorporated areas of King County . . . any building or structure without first obtaining, in addition to the building permit, a relocation investigation permit . . . .").

The County in this case did not seek to regulate the "manufacture and construction" of Bass' warehouses. Rather, the County required a permit for the "placement and occupancy" of the warehouses. Regulation of "placement and occupancy" falls within the category of "land use" or "site development" requirements. RCW 43.22.455 did not prohibit the County from issuing the notice and order against Bass.

## VESTING

Next, Bass contends that DLI approval gave him vested

rights to place his warehouses in King County. Under RCW 19.27.095(1), a valid and complete building permit application "shall be considered under the building permit ordinance in effect at the time of application." Bass notes that at the time he obtained DLI approval, UBC 104(e) provided a special rule for "temporary structures":

> Temporary structures such as reviewing stands and other miscellaneous structures, sheds, canopies or fences used for the protection of the public around and in conjunction with construction work may be erected by *special permit* from the building official for a limited period of time. Such buildings or structures need not comply with the type of construction or fire-resistive time periods required by this code. *Temporary buildings or structures shall be completely removed upon the expiration of the time limit stated in the permit.*

(Emphasis added.) Bass contends that when his warehouses were approved by DLI, they qualified as "temporary structures" under the building code; as such, they were exempt from further permit requirements. Bass maintains that later changes in the law may not interfere with his vested rights to use his "temporary structures."

UBC 104(e) does not give Bass a vested right to place his warehouses in King County. Bass never obtained a "special permit" for "temporary structures" under UBC 104(e). It is unlikely that he could have obtained such a permit, given that he intended to maintain the warehouses into the indefinite future.

Bass also argues that vested rights to place and occupy the warehouses arose from County permits authorizing Bass to operate a lumber yard on the same property in the 1970s. Bass does not show that any permit issued in connection with the lumber yard extended to authorize the future placement and occupancy of new buildings. We conclude that Bass did not have any vested rights to place and occupy the portable mini-warehouses in King County.

## DUE PROCESS

Bass contends that the abatement notice did not

fairly notify him of the County's allegations. Procedural due process requires notice that is "reasonably calculated under the circumstances to apprise affected parties of the pending action and to afford them an opportunity to present their objections." *Pease Hill v. County of Spokane*, 62 Wn. App. 800, 806, 816 P.2d 37 (1991).

The notice in this case informed Bass that he had failed to obtain "the required permit(s) and inspection approvals," citing §§ 21.34, 21.68 and 16.04 of the King County Code, and § 301 of the Uniform Building Code. The cited code sections occupy, in total, approximately seven typewritten pages in the King County Code. They are not overwhelmingly technical or complex. KCC 21.34 sets forth the allowed uses in a Manufacturing Park zone. KCC 21.68 requires a certificate of occupancy before "Any new building is initially occupied or used." KCC 16.04 adopts the Uniform Building Code by reference. UBC 301 requires a building permit before any building is "erected, constructed, enlarged, altered, repaired, moved, improved, removed, converted or demolished."

Bass plainly understood that the County wanted him to obtain a building permit. In his briefing to the Examiner, Bass stated "it appears that the Notice and Order are solely related to the absence of a 'building permit.' " Indeed, Bass had twice submitted to the County's wishes and initiated building permit applications. This demonstrates that he was well aware of what the County wanted. We conclude the notice adequately informed him of the nature of the County's complaint.

■ Bass' remaining "due process" argument is that the Examiner improperly relied on code provisions which were not mentioned in the notice and order. The County alleged that Bass needed a permit under UBC § 301 because he had "moved" a building. Bass argued before the Examiner that the warehouses did not require a permit under this section because they were prefabricated, portable structures. In his decision, the Examiner cited UBC § 5006(d), which provides, "Place-

ment of prefabricated assemblies at the building site shall be inspected by the building official to determine compliance with this code." Contrary to Bass' contentions, the Examiner's reference to § 5006 did not amount to an "amendment" of the County's order. Rather, it served as additional authority for the County's original contention that Bass was required to obtain a building permit. As discussed above, Bass was well aware that the County wanted him to obtain such a permit.

## PROPERTY RIGHTS

Bass contends that the County's enforcement action violated his fundamental constitutional rights to own and enjoy personal property and interfered with his lawful business practices. Bass does not cite any authority for the proposition that the constitution prohibits the County from requiring a permit for the placement and occupancy of prefabricated buildings.

The Hearing Examiner dismissed this line of argument as follows:

> The true source of Mr. Bass' concern appears to be his belief that on prior attempts to obtain building permits he was asked to make site improvements and dedications beyond the reasonable scope of the impacts caused by his new mini-storage use. While such are legitimate issues, their resolution is beyond the purview of this code enforcement appeal proceeding, which is solely concerned with the Appellant's obligation to submit a permit application.

The Examiner's conclusion is correct. Bass was cited for placing his structures without a permit. He appealed, contending that the County did not have authority to require a permit. The question of whether the County has imposed unlawful conditions on the permit process is not presented here.

## EQUITABLE ESTOPPEL

Bass alleges that County officials told him that he did not need to obtain building permits because his ware-

houses were not permanent structures, and that he relied on these statements in constructing and siting his warehouses. On this basis, Bass contends the County should be equitably estopped from requiring the permits.

■ Bass did not raise his estoppel argument before the Examiner. As a result, the Examiner did not make any findings concerning whether the County had informed Bass that he did not need permits, or whether Bass had relied on these statements. Therefore, we do not consider this issue on appeal. *See Smith v. Shannon*, 100 Wn.2d 26, 37, 666 P.2d 351 (1983); RAP 2.5(a).

Finally, Bass contends that the Examiner's decision was "contrary to law, arbitrary and capricious, in excess of authority, and null and void." We reject this contention. The Examiner's decision is factually supported and well-reasoned and we find it to be without error.

Affirmed.

BAKER, C.J., and WEBSTER, J., concur.